DANIEL DAVID DYDZAK
PLAINTIFF PRO SE
4265 MARINA CITY DRIVE, SUITE 407W
MARINA DEL REY, CA 90292
TELEPHONE: (310) 867-1289

UNITED STATES DISTRICT COURT

THE DISTRICT OF COLUMBIA

CASE NO.

Case: 1:12-cv-01534
Assigned To : Huvelle, Ellen S.
Assign. Date : 9/13/2012
Description: Pro Se General

| | |
|---|---|
| DANIEL DAVID DYDZAK, | COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF |
| Plaintiff, | |
| Vs. | |
| | **DEMAND FOR JURY TRIAL** |
| ARNOLD SCHWARZENEGGER, MARIA SHRIVER, ERIC H. HOLDER, JR., TIMOTHY GEITNER, UNITED STATES OF AMERICA, ANTHONY DEREK WEST, KAMALA DEVI HARRIS, PETER ANDREW KRAUSE, MARK R. BECKINGTON, CARLOS R. MORENO, IRELL & MANELLA, THOMAS J. BORRIS, GREGORY MUNOZ, FRANCES MUNOZ, MATTHEW MUNOZ, ROBERT J, TRENTACOSTA, BETH JAY, WILLIAM R. NEVITT, JR., MICHAEL RODDY, ALAN MARTIN CARLSON, DONALD F. MILES, ARNOLD & PORTER, THOMAS V. GIRARDI, HOWARD B. MILLER, TODD ALLEN TORR, JEFFERY WILLARD REISIG, JOHN J. QUINN, aka JACK QUINN, | |



RECEIVED CHECK
SEP -13 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia
2012

BERNARD A. BURK, DOUGLAS )
WINTHROP, SEAN SELEGUE, )
KENNETH G. HAUSMAN, HOLLY )
FUJIE, RICHARD M. ALEXANDER, )
RONALD M. GEORGE, ERIC M. )
GEORGE, ALAN I. ROTHENBERG, )
DENNIS M. WASSER, CHARLES )
SCHWAB, SCOTT DREXEL, STARR )
BABCOCK, DANIELLE A. LEE, ROBERT )
A. HAWLEY, JOSEPH LAWRENCE )
DUNN, JAMES TOWERY, HOWARD )
L. DICKSTEIN, JEANNINE ENGLISH, )
RUTH ASHLEY, VICTORIA MOLLOY, )
JANET HUNT, ELI MORTGENSTERN, )
AUGUSTUS HERNANDEZ, RUSSELL )
WEINER, THOMAS MORE SOCIETY, )
MARK P. ROBINSON, JR., MARY )
M. ROBERTS, SARAH L. OVERTON, )
CUMMINGS, MCCLOREY, DAVIS )
& ACHO, ALEC Y. CHANG, )
WILLIAM M. WARDLAW, FREEMAN, )
SPOGLI & CO., TANI CANTIL- )
SAKAUYE, MATTHEW WERDEGAR, )
KEKER & VAN NESS, SUSAN J. HARRIMAN )
KATHRYN M. WERDEGAR, CAROL )
A. CORRIGAN, JOYCE L. KENNARD, )
MING W. CHIN, MARVIN R. BAXTER, )
GOODWIN LIU, 1ST CENTURY BANK, )
Aka FIRST CENTURY BANK, 1ST )
CENTURY BANCSHARES, INC., )
WILLIAM W. BRIEN, DAVE BROOKS, )
JOSEPH DIGANGE, JASON D. )
DINAPOLI, ALAN D. LEVY, )
ROBERT A. MOORE, BARRY D. )
PRESSMAN, NADINE WATT, )
LEWIS N. WOLFF, STANLEY R. )
ZAX, H. WALTER CROSKEY, )
JOAN D. KLEIN, PATTI S. KITCHING, )

JUDITH MCCONNELL, RICHARD D. )
HUFFMAN, DOUGLAS P. MILLER, )
STEVEN JAHR, HARRY E. HULL, JR., )
RON BURKLE, JAMS, JOHN K. )
TROTTER, JR., AKA JACK TROTTER, )
CHRIS POOLE, GILBERT ANTHONY )
CEDILLO, aka GIL CEDILLO, MIKE )
DAVIS, FELIPE FUENTES, ROBERT K. )
BLUMENFIELD, aka BOB )
BLUMENFIELD, JUDY JOHNSON, )
TOM LAYTON, LISA VON ESCHEN, )
ABELSON HERRON, MICHAEL BRUCE )
ABELSON, VINCENT H. HERRON, )
WRIGHT & L'ESTRANGE, VINCENT )
H. HERRON, JEFFREY IRWIN )
WERTHEIMER, SANDOR SAMUELS, )
BET TZEDEK, aka BET TZEDEK )
LEGAL SERVICES, WILLIAM )
F. FAHEY, CAROLYN B. )
KUHL, DAVID J. PASTERNAK, )
and DOES 1 through 10, Inclusive, )
)
Defendants. )
_______________________________ )

COMES NOW Plaintiff PRO SE, DANIEL D. DYDZAK, and alleges as follows:

## PRELIMINARY ALLEGATIONS

### I. PARTIES

1. Plaintiff, DANIEL DAVID DYDZAK ("DYDZAK"), is, and at all times herein mentioned was, a resident of Marina del Rey, County of Los Angeles, State of California.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant ARNOLD SCHWARZENEGGER ("SCHWARZENEGGER") is, and at all times herein mentioned was, a

resident of Los Angeles County, State of California.

3. At all times relevant hereto, Defendant SCHWARZENEGGER is, and was at all times herein mentioned, acting in his individual capacity in doing the acts herein alleged, and therefore enjoys no quasi-judicial or judicial immunity from liability. Said Defendant is, furthermore, a well-known actor and former Governor of the State of California.

4. Plaintiff is informed and believes, and thereon alleges, that Defendant MARIA SHRIVER ("SHRIVER") is, and was all times herein mentioned was, a resident of Los Angeles County, State of California. Plaintiff is further informed and believes, and thereon alleges, that Defendant SHRIVER is well-known as the niece of the late President JOHN F. KENNEDY and ex-wife of Defendant SCHWARZENEGGER.

5. Plaintiff is informed and believes, and thereon alleges, that Defendant ERIC H. HOLDER, JR. ("HOLDER") is, and at all times herein mentioned was, a resident of Washington, D.C. and that the unlawful activities attributed to him were done in his individual and/or administrative capacity. Upon information and belief, Defendant HOLDER's unlawful conduct , as alleged herein, occurred completely or by and large in the District of Columbia. Defendant HOLDER is presently the Attorney General of the United States of America.

6. Plaintiff is informed and believes, and thereon alleges, that Defendant TIMOTHY GEITNER ("GEITNER") is, and was at all times herein mentioned, a resident of Washington, D.C. His unlawful conduct complained of, as herein alleged, was done in his individual

and/or administrative capacity. At all times relevant hereto, Defendant GEITNER is and was Secretary of the Treasury of the United States of America. Upon information and belief, the unlawful actions of Defendant GEITNER, as alleged herein, occurred completely or by and large in the District of Columbia.

7. Plaintiff is informed and believes, and thereon alleges, that Defendants HOLDER and GEITNER do not enjoy any judicial, quasi-judicial or other government immunity for their unlawful actions, as herein alleged.

8. Defendant, UNITED STATES OF AMERICA ("USA"), is, and was at all times herein mentioned, a governmental entity organized and existing under and by virtue of the United States Constitution and other laws promulgated in connection therewith. Said Defendant is, and was at all times relevant hereto, headquartered in the District of Columbia.

9. Defendant ANTHONY DEREK WEST ("WEST") is, and was at all times herein mentioned, an individual residing in the District of Columbia. Upon information and belief, Defendant WEST is an attorney working for the U.S. Department of Justice and/or the office of the Attorney General of the United States of America.

10. Plaintiff is further informed and believes, and thereon alleges, that he is the brother-in-law of Defendant KAMALA DEVI HARRIS ("HARRIS"). Defendant WEST is being sued herein in his individual and/or administrative capacity, and therefore enjoys no government, judicial or quasi-judicial immunity for his unlawful actions, as herein alleged.

11. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant HARRIS is, and was at all times herein mentioned, a resident of the County of San Francisco, State of California. Defendant HARRIS is presently the Attorney General of the State of California.

12. Plaintiff is informed and believes, and thereon alleges, that Defendant PETER ANDREW KRAUSE ("KRAUSE") is, and at all times herein mentioned was, a resident of the County of Sacramento, State of California. Defendant KRAUSE is presently an assistant or deputy attorney with the Office of the Attorney General of California. Defendant KRAUSE enjoys no government, judicial or quasi-judicial immunity, because his wrongful conduct herein alleged was done in an individual capacity.

13. Plaintiff is informed and believes, and thereon alleges, that Defendant MARK R. BECKINGTON ("BECKINGTON") is, and was at all times herein mentioned, a resident of Los Angeles County, State of California. Defendant BECKINGTON is presently an assistant or deputy attorney with the Office of the Attorney General of California. Defendant BECKINGTON enjoys no government, judicial or quasi-judicial immunity, because his wrongful conduct herein alleged was done in an individual capacity.

14. Defendant CARLOS R. MORENO ("MORENO") is, and was at all times herein mentioned, an individual residing in the County of Los Angeles, State of California. At all times herein mentioned, Defendant MORENO is and was an attorney at law duly

admitted to practice law in all the Courts of the State of California. Upon information and belief, Defendant MORENO is a partner and allegedly "of counsel" to the law firm, Defendant IRELL & MANELLA ("IRELL").

15. Defendant MORENO is being sued herein in his individual capacity and enjoys no government, judicial or quasi-judicial immunity for the misconduct at issue herein. Plaintiff is informed and believes, and thereon alleges, that Defendant MORENO's wrongful actions and conduct, as herein alleged, were knowingly done, individually and in concert with and the approval, ratification and consent of his law firm, Defendant IRELL.

16. Plaintiff is informed and believes, and thereon alleges, that Defendant IRELL is a major law firm, with offices in Los Angeles and Newport Beach, California.. Plaintiff is unaware of the exact legal identity and status of Defendant IRELL, whether it is a legal corporation, limited liability partnership or some other form of legal entity.
Plaintiff will seek leave to amend this lawsuit to set forth the exact nature and identity of Defendant IRELL when same is ascertained, at or before trial and according to proof.

17. Defendants MORENO and IRELL committed tortious, illegal and RICO conduct, as hereinafter alleged and described, negating its bogus, marketing image as a firm with the highest ethical and professional standards. Defendant IRELL is, and was at all times herein mentioned, responsible and liable for its own wrongful, fraudulent and unlawful actions as well as for Defendant MORENO's illegal actions herein, based upon the doctrines, inter alia, of principal and agent and respondeat superior.

18. Plaintiff is informed and believes, and thereon alleges, that Defendant THOMAS J. BORRIS ("BORRIS") is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

19. Defendant BORRIS is being sued herein for his illegal, unethical and egregious conduct in his individual and administrative capacities. Said Defendant therefore enjoys no government immunity, judicial, quasi-judicial or otherwise, for his wrongful actions herein alleged.

20. Upon information and belief, Defendant GREGORY MUNOZ is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

21. Defendant GREGORY MUNOZ is being sued herein for his illegal, unethical and egregious conduct in his individual capacity and not in any judicial capacity. Said Defendant therefore enjoys no government immunity, judicial, quasi-judicial or otherwise, for his wrongful actions herein alleged.

22. Plaintiff is informed and believes, and thereon alleges, that Defendant FRANCES MUNOZ is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

23. Upon information and belief. Defendant FRANCES MUNOZ is, and was at all times herein mentioned, an inactive member of the State Bar of California. Upon further information and belief, in doing the wrongful actions alleged herein, FRANCES MUNOZ was at all times relevant hereto acting in her individual capacity. She therefore enjoys no immunity from

liability, judicial, quasi-judicial or otherwise.

24. Defendant FRANCES MUNOZ is, and was at all times herein mentioned, the older sister of Defendant GREGORY MUNOZ, and aided and abetted him with other Defendants in committing unlawful, tortious and egregious acts against Plaintiff, as herein alleged.

25. Plaintiff is informed and believes, and thereon alleges, that Defendant MATTHEW MUNOZ is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

26. Upon information and belief, Defendant MATTHEW MUNOZ is, and was at all times herein mentioned, the son of Defendant GREGORY MUNOZ, grandson of the legendary actor, JOHN WAYNE, and nephew of Defendant FRANCES MUNOZ. Plaintiff is further informed and believes, and thereon alleges, that Defendant MUNOZ is, and was at all times herein mentioned, an active member of Defendant THOMAS MORE SOCIETY ("TMS").

27. Plaintiff is informed and believes, and thereon alleges, that Defendant ROBERT J. TRENTACOSTA ("TRENTACOSTA") is, was at all times herein mentioned, an individual residing in the County of San Diego, State of California. Defendant TRENTACOSTA is being sued herein in his individual and/or administrative capacity, and therefore enjoys no government immunity from liability, judicial, quasi-judicial or otherwise.

28. Plaintiff is informed and believes, and thereon alleges, that Defendant BETH JAY ("JAY") is, and was at all times herein mentioned, an individual residing in the County of San

Francisco, State of California. Plaintiff is further informed and believes, and thereon alleges, that she is, and was at all times herein mentioned, an active member of the State Bar of California.

29. Defendant JAY is being sued herein in her individual capacity, and therefore enjoys no immunity from liability, judicial, quasi-judicial or otherwise. At all times relevant hereto, upon information and belief, Defendant JAY had and has an ignoble and unsavory reputation as a "fixer" for the Supreme Court of California, Defendants RONALD M. GEORGE, JOSEPH LAWRENCE DUNN ("DUNN"), STARR BABCOCK ("BABCOCK"), DANIELLE A. LEE ("LEE"), MARY M. ROBERTS ("ROBERTS"), SARAH L. OVERTON ("OVERTON"), ALAN I. ROTHENBERG ("ROTHENBERG"), THOMAS V. GIRARDI ("GIRARDI") and other individuals. Upon further information and belief, Defendant JAY routinely helps rig or fix the "pre-ordained" results of litigation and other legal matters (such as state bar disciplinary cases) by assigning cases to judges on the same unethical path and agenda and by frequently engaging in improper ex parte, extrajudicial communications with those judges and unscrupulous, Bar-friendly and connected attorneys.

30. Defendant WILLIAM R. NEVITT, JR. ("NEVITT"), upon information and belief, is, and was at all times herein mentioned, an individual residing in the County of San Diego, State of California.

31. Said Defendant is being sued herein in his individual capacity, and therefore enjoys no judicial, quasi-judicial or other government immunity from liability in this action.

32. Plaintiff is informed and believes, and thereon alleges, that Defendant MICHAEL

RODDY ("RODDY") is, and was at all times herein mentioned, a resident residing in the County of San Diego, State of California.

33. Defendant RODDY is being sued herein in his individual and/or administrative capacity, and therefore enjoys no judicial, quasi-judicial or other government immunity from liability in this action.

34. Defendant ALAN MARTIN CARLSON ("CARLSON") is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

35. Defendant CARLSON is being sued herein in his individual and/or administrative capacity, and therefore enjoys no immunity from liability, judicial, quasi-judicial or otherwise. Furthermore, at all times relevant hereto, Defendant CARLSON, as an active member of the State Bar of California, was held to high standards of professional conduct and ethics which he has violated towards Plaintiff and others similarly situated.

36. Plaintiff is informed and believes, and therefore alleges, that Defendant DONALD F. MILES ("MILES") is, and was at all times herein mentioned, an individual residing in both Los Angeles County and San Francisco County, State of California.

37. Defendant MILES is being sued herein in his individual capacity, and therefore enjoys no immunity from liability, judicial, quasi-judicial or otherwise.

38. Plaintiff is informed and believes, and thereon alleges, that Defendant ARNOLD & PORTER is, and was at all times herein mentioned, a well-known national and international law firm, exact legal status or identity unknown. Plaintiff will seek leave to amend this

Complaint when the exact nature of this Defendant is ascertained, whether it be a professional corporation, limited liability partnership or other such legal entity.

39. Plaintiff is informed and believes, and thereon alleges, that the principal place of business of Defendant ARNOLD & PORTER is, and was at all times herein mentioned, Washington, District of Columbia.

40. Plaintiff is informed and believes, and thereon alleges, that Defendants. THOMAS V. GIRARDI ("GIRARDI") and HOWARD B. MILLER ("MILLER") are, and were at all times herein mentioned, individuals residing in the County of Los Angeles, State of California.

41. Upon information and belief, Defendants GIRARDI and MILLER are well-known attorneys practicing primarily in Los Angeles County, whose reputations have been tarnished in recent years by questionable ethical practices, defrauding of clients and a number of malpractice cases directed at their law firm, GIRARDI & KEESE. Upon further information and belief, both Defendants GIRARDI and MILLER are, and were at all times herein mentioned, California Bar-insiders who use their contacts, influence-peddling, campaign contributions, professional friendships, payoffs, free airfare, trips, hotel lodging, sports tickets and golf rounds, money-laundering tactics and underwriting of social events to affect the outcome of cases, with certain judges and attorneys

42. Plaintiff is informed and believes, and thereon alleges, that Defendant TODD ALLEN TORR ("TORR") is, and was at all times herein mentioned, an individual living in

Geneva, Switzerland. However, he claims that his place of work as a California-licensed attorney is, and was at all times herein mentioned, in the City of San Francisco, State of California.

43. Plaintiff is informed and believes, and thereon alleges, that Defendant JEFFERY WILLARD REISIG ("REISIG") is, and was at all times herein mentioned, an individual residing in Yolo County, State of California. Upon further information and belief, Defendant REISIG is, and was at all times herein mentioned, District Attorney for Yolo County.

44. Plaintiff contends that Defendant REISIG'S actions against him, as hereinafter alleged, are, and were at all times herein mentioned, wrongful, unlawful, unconstitutional and with no reasonable basis in fact and law. Moreover, said Defendant REISIG enjoys no government immunity, including quasi-judicial immunity, because his unlawful actions violated, inter alia, federal and state privacy laws, including without limitation California Shield Laws concerning a journalist's work product, privileged records.

45. Plaintiff is informed and believes, and thereon alleges, that Defendant JOHN J. QUINN, aka JACK QUINN ("QUINN"), is, and was at all times herein mentioned, an individual residing in the County of Los Angeles, State of California.

46. Upon further information and belief, Defendant QUINN claims that he is a retired partner of the Los Angeles office of Defendant ARNOLD & PORTER, although he still receives voice mail messages at that location.

47. Upon further information and belief, Defendant QUINN is, and was at all times

herein mentioned, a mediator and arbitrator at Defendant JAMS and a close friend and confidant of many of the Defendants named herein, such as Defendants ROTHENBERG, RONALD M. GEORGE, ERIC M. GEORGE, GIRARDI, MILLER, H. WALTER CROSKEY ("CROSKEY"), JOAN D. KLEIN ("KLEIN"), PATTI S. KITCHING ("KITCHING"), and JOHN K. TROTTER, JR. ("TROTTER").

48. Plaintiff is informed and believes, and thereon alleges, that Defendant BERNARD A. BURK ("BURK") is. and was at all times herein mentioned, an individual residing in the the City of Chapel Hill, North Carolina. At all times relevant hereto, Defendant BURK is and was licensed as a California attorney.

49. Plaintiff is informed and believes, and thereon alleges, that Defendants DOUGLAS WINTHROP ("WINTHROP"), SEAN SELEGUE ("SELEGUE"), and KENNETH G. HAUSMAN ("HAUSMAN") are, and were at all times herein mentioned, individuals residing in the County of San Francisco, State of California.

50. Plaintiff is informed and believes, and thereon alleges, that Defendant HOLLY FUJIE ("FUJIE") is, and was at all times herein mentioned, an individual residing in the County of Los Angeles, State of California. Said Defendant is being sued herein in her individual and/or administrative capacity, and therefore enjoys no judicial, quasi-judicial or other government immunity from liability.

51. Plaintiff is informed and believes, and thereon alleges, that Defendant RICHARD M. ALEXANDER ("ALEXANDER") is, and was at all times herein mentioned, an individual

living and working in Washington, D.C. At all times herein mentioned, said Defendant ALEXANDER is and was managing partner of Defendant ARNOLD & PORTER.

52. Plaintiff is informed and believes, and thereon alleges, that Defendants RONALD M. GEORGE, ERIC M. GEORGE, ROTHENBERG and DENNIS M. WASSER ("WASSER") are individuals residing in the County of Los Angeles, State of California. The aforesaid Defendants are, and were at all times herein mentioned, California-licensed attorneys and close, personal friends and confidants, all involved in unlawful actions and conduct, as herein alleged.

53. Upon information and belief, Defendant CHARLES SCHWAB is, and was at all times herein mentioned, an individual residing in the City of San Francisco, State of California. Said Defendant is, and was at all times relevant hereto, well-known as a businessman in financial markets and for giving investment advice.

54. Plaintiff is informed and believes, and thereon alleges, that Defendant SCOTT DREXEL is, and was at all times herein mentioned, an individual residing in both the District of Columbia and the City of Burlingame, State of California.

55. Plaintiff is informed and believes, and thereon alleges, that Defendants STARR BABCOCK ("BABCOCK"), DANIELLE A. LEE ("LEE"). ROBERT A. HAWLEY ("HAWLEY") and RUTH ASHLEY ("ASHLEY") are, and were at all times herein mentioned, individuals residing in the County of San Francisco, State of California. Said Defendants, and each of them, are, and were, at all times relevant hereto, attorneys duly licensed to practice law in the State of California.

56. In this lawsuit, Defendants BABCOCK, LEE, HAWLEY and ASHLEY are being sued in their respective individual capacities. They therefore enjoy no government immunity from liability, judicial, quasi-judicial or otherwise.

57. Plaintiff is informed and believes, and thereon alleges, that Defendant JOSEPH LAWRENCE DUNN ("DUNN") is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

58. Plaintiff is informed and believes, and thereon alleges, that Defendant JAMES TOWERY ("TOWERY") is, and was at all times herein mentioned, an individual residing in the County of Santa Clara, State of California. Defendant TOWERY is, and was at all times herein mentioned, a California-licensed attorney and is being sued herein in his individual capacity.

59. Plaintiff is informed and believes, and thereon alleges, that Defendants HOWARD L. DICKSTEIN ("DICKSTEIN") and JEANINE ENGLISH ("ENGLISH") are, and were at all times herein mentioned, husband and wife and individuals residing in the County of Sacramento, State of California.

60. At all times relevant hereto, Defendant DICKSTEIN is and was a California-licensed attorney practicing primarily in the City of Sacramento, State of California.

61. Plaintiff is informed and believes, and thereon alleges, that Defendants VICTORIA MOLLOY ("MOLLOY"), ELI MORTGENSTERN ("MORTGENSTERN"), AUGUSTUS HERNANDEZ ("HERNANDEZ"), and RUSSELL WEINER ("WEINER") are, and were at all times herein mentioned, individuals residing in the County of Los Angeles,

State of California.

62. At all times herein mentioned, Defendants MOLLOY, MORTGENSTERN, HERNANDEZ and WEINER are and were attorneys who are licensed to practice law in the State of California. Said Defendants, and each of them, are being sued herein in their respective individual capacities and therefore do no enjoy any government immunity from liability, judicial, quasi-judicial or otherwise.

63. It is noteworthy that, upon information and belief, Defendants MOLLOY and WEINER were terminated, at all times relevant hereto, from their former positions as prosecutors with the State Bar of California for abusing their positions and violating ethical and professional standards, as herein alleged, with respect to DYDZAK and other California attorneys.

64. Plaintiff is informed and believes, and thereon alleges, that Defendant TMS is, and at all times herein mentioned was, an organization or legal entity associated and affiliated with the Roman Catholic Church in various cities throughout the United States, including, without limitation, Washington, D.C., Los Angeles and Newport Beach, California. Plaintiff is unaware of the exact legal status and identity of said Defendant, and will seek leave to amend this Complaint when same are ascertained to conform to proof.

65. Plaintiff is informed and believes, and thereon alleges, that MARK P. ROBINSON, JR. ("ROBINSON") is, and was at all times herein mentioned, an individual residing in the County of Orange County, State of California.

66. At all times herein mentioned, Defendant ROBINSON is and was an attorney who

is duly licensed to practice law in the State of California.

67. Plaintiff is informed and believes, and thereon alleges, that Defendant MARY M. ROBERTS ("ROBERTS") is, and was at all times herein mentioned, an individual residing in the City of San Francisco, State of California.

68. At all times herein mentioned, Defendant ROBERTS is and was an attorney who is duly licensed to practice law in the State of California. Furthermore, at all times relevant hereto, Defendant ROBERT has and had no government immunity from liability in this action, since she is being sued herein in her individual and/or administrative capacity.

69. Upon information and belief, like Defendant JAY, Defendant ROBERTS has, and had at all times herein mentioned, an unsavory reputation of repeatedly assisting in "fixing" or "rigging" the outcome of cases in or emanating from the State of California. This nefarious. unethical and unlawful conduct was done to unduly benefit the Supreme Court of California, the non-elected Judicial Council, the California Administration of the Courts ("AOC"), the State Bar of California, the Attorney General of California, government attorneys and Bar-connected private attorneys and parties. These persons include, without limitation. Defendants GIRARDI, ROTHENBERG, JAY, DREXEL, RONALD M. GEORGE, ERIC M. GEORGE, OVERTON, HARRIS, BECKINGTON, LEE, KRAUSE and RON BURKLE ("BURKLE").

70. Upon further information and belief, Defendant ROBERTS has, and had at all times herein mentioned, a pattern and history over many years of fixing and rigging the "pre-

ordained" outcomes of litigation and legal matters by engaging in completely unethical, illegal ex parte, extrajudicial communications with judges and other influence-peddling attorneys and individuals. This has earned her the unenviable nickname, MARY "THE LIZARD" ROBERTS, clearly a reference to her slithering and disreputable conduct, as herein alleged.

71. Plaintiff is informed and believes, and thereon alleges, that Defendant OVERTON is, and was at all times herein mentioned, an individual residing in the County of Riverside, State of California.

72. At all times herein mentioned, Defendant OVERTON is and was a partner of the law firm, Defendant CUMMINGS, McCLOREY, DAVIS and ACHO (CMDA), exact legal status or identity unknown. Defendant CMDA has offices in Michigan, California, Missouri and West Africa. Plaintiff is unaware at this time about the exact identity and legal status of Defendant CMDA, and will seek leave amend this Complaint to set forth same when ascertained.

73. Plaintiff is informed and believes, and thereon alleges, that Defendant OVERTON works primarily at Defendant CMDA's office in Riverside, California. Plaintiff contends that Defendant CMDA is, and was at all times herein mentioned, fully cognizant about, participated in, approved, ratified and otherwise allowed its and OVERTON's wrongful and tortious actions against Plaintiff, as herein alleged and described. Said Defendants are therefore jointly and severally liable for their misconduct herein alleged.

74. Plaintiff is informed and believes, and thereon alleges, that Defendant ALEC Y.

CHANG ("CHANG") is, and was at all times herein mentioned, an individual residing in the City of Palo Alto, State of California. At all times relevant hereto, Defendant CHANG is and was a California-licensed attorney.

75. Plaintiff is informed and believes, and thereon alleges, that Defendant WILLIAM M. WARDLAW ("WARDLAW") is, and was at all times herein mentioned, an individual residing in the County of Los Angeles, State of California.

76. Plaintiff is informed and believes, and thereon alleges, that Defendant WARDLAW is presently an inactive member of the State Bar of California and a principal or partner in the financial management company, Defendant FREEMAN, SPOGLI & CO ("FSC"), with offices in New York City and Century City, California.

77. Plaintiff does not know the exact legal status and identity of Defendant FSC, and will seek leave to amend this Complaint when same are ascertained.

78. Plaintiff is informed and believes, and thereon alleges, that Defendant TANI CANTIL-SAKAUYE ("CANTIL-SAKAUYE") is, and was at all times herein mentioned, an individual residing in the County of Sacramento and County of San Francisco, State of California.

79. Although Defendant CANTIL-SAKAUYE is presently the Chief Justice of the Supreme Court of California, she enjoys no judicial or other government immunity from liability for injuring Plaintiff, as alleged herein, because her wrongful and unlawful actions were done in an individual and/or administrative capacity.

80. Plaintiff is informed and believes, and thereon alleges, that Defendants MATTHEW WERDEGAR ("MWERDEGAR") and SUSAN J. HARRIMAN ("HARRIMAN") are, and were at all times herein mentioned, individuals residing in the City of San Francisco, State of California.

81. At all times herein mentioned, Defendants MWERDEGAR and HARRIMAN are and were attorneys duly admitted to practice law in the State of California.

82. Plaintiff is informed and believes, and thereon alleges. that Defendant KEKER & VAN NEST ("KVN") is, and was at all times herein mentioned, a law firm located in the City of San Francisco, State of California.

83. Plaintiff is unaware at this time of the exact legal identity or status of Defendant KVN. Plaintiff will seek leave to amend this Complaint when same is ascertained.

84. Plaintiff is informed and believes, and thereon alleges, that Defendants MWERDEGAR and HARRIMAN are, and were at all times herein mentioned, partners of Defendant KVN. Upon further information and belief, Defendant KVN, through its attorneys JOHN KEKER and JON STREETER, are well aware of, participate in and support and ratify Defendant KVN's, HARRIMAN's and MWERDEGAR's unlawful actions, as herein alleged. Accordingly, KVN, HARRIMAN and MWERDEGAR are jointly and severally liable for their unlawful conduct, as herein alleged and described.

85. Upon information and belief, Defendant KATHRYN M. WERDEGAR ("KATHRYN") is, and was at all times herein mentioned, an individual residing in the County

of San Francisco, State of California.

86. Upon further information and belief, Defendant KATHRYN is, and was at all times herein mentioned, the mother of Defendant MWERDEGAR. Furthermore, while Defendant KATHRYN is, and was at all times relevant hereto, an Associate Justice of the Supreme Court of California, her unlawful conduct and actions herein alleged were done in her individual and/or administrative capacity. She cannot therefore avail herself in this action of any judicial or quasi-judicial immunity from liability.

87. Plaintiff is informed and believes, and therefore alleges, that Defendants CAROL A. CORRIGAN ("CORRIGAN"), JOYCE L. KENNARD ("KENNARD"), MING W. CHIN ("CHIN"), MARVIN R. BAXTER ("BAXTER"), and GOODWIN LIU ("LIU") are, and were at all times herein mentioned, residents of the County of San Francisco, State of California.

88. Although Defendants CORRIGAN, KENNARD, CHIN, BAXTER and LIU are, and were at all times herein mentioned, Associate Justices of the Supreme Court of California, said Defendants, and each of them, are being sued herein in their respective individual and/or administrative capacities. They therefore enjoy no immunity from liability, judicial, quasi-judicial or otherwise, in this action.

89. Plaintiff is informed and believes, and thereon alleges, that Defendant 1ST CENTURY BANK, aka FIRST CENTURY BANK ("FIRST CENTURY"), is, and was at all times herein mentioned, a financial institution or bank regulated by the federal government and supervised by the Office of the Comptroller of the Currency ("OCC").

90. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant 1st CENTURY BANCSHARES, INC. ("BANCSHARES") is, and was at all times herein mentioned, a bank holding company for Defendant FIRST CENTURY and a Delaware corporation.

91. Plaintiff is informed and believes, and thereon alleges, that Defendants WILLIAM W. BRIEN ("BRIEN"), DAVE BROOKS ("BROOKS"), JOSEPH DIGANGE ("DIGANGE"), JASON DINAPOLI ("DINAPOLI"), ALAN D. LEVY ("LEVY"), ROBERT A. MOORE ("MOORE"), BARRY D. PRESSMAN ("PRESSMAN"), NADINE WATT ("WATT"), LEWIS N. WOLFF ("WOLFF"), and STANLEY R. ZAX ("ZAX") are, and were at all times herein mentioned, individuals residing in the County of Los Angeles, State of California.

92. Plaintiff is further informed and believes, and thereon alleges, that Defendants BRIEN, BROOKS, DIGANGE, DINAPOLI, LEVY, MOORE, PRESSMAN, WATT, WOLFF and ZAX are current directors of Defendant FIRST CENTURY and each had and have investor and ownership shares in said bank and Defendant BANCSHARES. Upon information and belief, Defendants ROTHENBERG and ERIC M. GEORGE are, and were at all relevant times hereto, directors of the bank and have ownership interests in said entities. At all times relevant hereto, upon information and belief. Defendants WASSER and RONALD M. GEORGE had and have ownership, equity, shares, accounts and investor roles in Defendants FIRST CENTURY and BANCSHARES.

93. Plaintiff is informed and believes, and thereon alleges, that Defendants H.

WALTER CROSKEY ("CROSKEY"), JOAN D. KLEIN ("KLEIN") and PATTI S. KITCHING ("KITCHING ") are, and were at all times relevant hereto, individuals residing in the County of Los Angeles, State of California.

94. Defendant JANET HUNT ("HUNT") is, upon information and belief, presently an adult residing and working in Honolulu, Hawaii. Upon further information and belief, she is presently an inactive member of the State Bar of California. Prior to living in Hawaii, Defendant HUNT worked in the County of Los Angeles, State of California.

95. Defendant HUNT is being sued herein in her individual capacity and therefore enjoys no immunity from liability, either judicial, quasi-judicial or otherwise.

96. Upon information and belief, Defendant HUNT was fired from her former position as a prosecutor with the State Bar of California for abusing her position and committing unlawful actions towards DYDZAK and other California attorneys, as herein alleged, including, without limitation, improper ex parte communications with Defendants ROTHENBERG and JAY in DYDZAK's disciplinary case.

97. Upon information and belief, Defendants JUDITH MCCONNELL ("MCCONNELL") and RICHARD D. HUFFMAN ("HUFFMAN") are. and were at all times herein mentioned, individuals residing in the County of San Diego, State of California.

98. Defendants MCCONNELL and HUFFMAN are being sued in their respective individual capacities, and therefore enjoy no immunity from liability, either judicial. quasi-judicial or otherwise.

99. Upon information and belief, Defendant DOUGLAS P. MILLER ("MILLER") is, and was at all times herein mentioned, an individual residing in the County of Riverside, and therefore enjoys no immunity from liability, either judicial, quasi-judicial or otherwise.

100. Plaintiff is informed and believes, and thereon alleges, that Defendant STEVEN JAHR ("JAHR") is, and was at all times herein mentioned, an individual residing in both Shasta County and the County of San Francisco, State of California.

101. Plaintiff is informed and believes, and thereon alleges, that Defendant JAHR is, and was at all times herein mentioned, an inactive member of the State Bar of California. Said Defendant is being sued herein in his individual capacity and therefore enjoys no immunity from liability, judicial, quasi-judicial or otherwise.

101. Plaintiff is informed and believes, and thereon alleges, that Defendant HARRY E. HULL ("HULL") is, and was at all times herein mentioned, an individual residing in the County of Sacramento, State of California.

102. Plaintiff is informed and believes, and thereon alleges, that Defendant BURKLE is, and was at all times herein mentioned, an individual residing in the County of Los Angeles, State of California.

103. Plaintiff is informed and believes, and thereon alleges, that Defendant JAMS is, and was at all times herein mentioned, an entity composed of retired judges and attorneys who mediate and arbitrate legal disputes, with many offices throughout the United States of America. Defendant JAMS is presently headquartered in Irvine, California.

104. The exact identity and legal status of Defendant JAMS is unknown at this time. Plaintiff will seek leave to amend this Complaint when same have been ascertained.

105. Defendant TROTTER is, and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

106. Upon information and belief, Defendant CHRIS POOLE ("POOLE") is. and was at all times herein mentioned, an individual residing in the County of Orange, State of California.

107. Upon further information and belief, Defendant POOLE is, and was at all times herein mentioned, Chief Executive Officer (CEO) of Defendant JAMS, working primarily out of Irvine, California.

108. Plaintiff is informed and believes, and thereon alleges, that Defendants MIKE DAVIS ("DAVIS"), FELIPE FUENTES ("FUENTES"), GILBERT ANTHONY CEDILLO aka GIL CEDILLO ("CEDILLO"), AND ROBERT K. BLUMENFIELD, aka BOB BLUMENFIELD ("BLUMENFIELD"), are individuals residing in the County of Sacramento, State of California.

109. Upon further information and belief, Defendants DAVIS, FUENTES, CEDILLO and BLUMENFIELD are, and were at all times herein mentioned, members of the California State Legislature in Sacramento, California. Said Defendants are being sued herein in their individual capacities, and therefore enjoy no government immunity from liability in this action.

110. Plaintiff is informed and believes, and thereon alleges, that Defendant JUDY JOHNSON ("JOHNSON") is, and was at all times herein mentioned, an individual residing in

Contra Costa County, State of California.

111. Defendant JOHNSON is being sued herein in her individual capacity, and therefore enjoys no immunity from liability, judicial, quasi-judicial or otherwise, in this action.

112. Upon information and belief, Defendant JOHNSON was terminated from her former position as Executive Director of the State Bar of California approximately two years ago, under a cloud of ethical and criminal violations involving converting major monies from Bar coffers and setting up bogus entities to unjustly enrich herself. Upon further information and belief, the State Bar of California, known itself for its misuse of government funds by individuals such as Defendant DUNN, did not investigate JOHNSON for these transgressions.

113. Defendant TOM LAYTON ("LAYTON"), aka THOMAS LAYTON, is, and was at all times herein mentioned, upon information and belief, an individual residing in the County of Orange, State of California.

114. Defendant LAYTON is being sued herein in his individual capacity, and therefore enjoys no government immunity from liability in this action.

115. Plaintiff is informed and believes, and thereon alleges, that Defendants LISA VON ESCHEN ("VON ESCHEN"), MICHAEL BRUCE ABELSON ("ABELSON") and and VINCENT H. HERRON ("HERRON") are, and were at all times herein mentioned, individuals residing in the County of Los Angeles, State of California.

116. Plaintiff is further informed and believes, and thereon allege, that Defendants VON ESCHEN, ABELSON and HERRON are, and were at all times herein mentioned,

attorneys who are duly licensed to practice law in the State of California. Upon further information and belief, said Defendants are former partners of LATHAM WATKINS, a major American law firm.

117. Plaintiff is informed and believes, and thereon alleges, that Defendants VON ESCHEN, ABELSON and HERRON are, and were at all times relevant hereto, partners of Defendant ABELSON HERRON, a law firm based in Los Angeles and San Diego, California. Upon information and belief, Defendant ABELSON HERRON was formed after there was a mass exodus of attorneys from LATHAM WATKINS, most of whom specialize in insurance defense issues and representing financial and banking institutions.

118. Plaintiff is informed and believes, and thereon alleges, that Defendant ABELSON HERRON is, and was at all times herein mentioned, a limited liability partnership ("LLP"), duly organized and existing under and by virtue of the laws of the State of California.

119. Plaintiff is informed and believes, and thereon alleges, that Defendant WRIGHT & L'ESTRANGE ("WL") is. and was at all times herein mentioned, a law firm which is located in the City of San Diego, State of California.

120. Presently, Plaintiff is unaware of the exact legal status or identity of Defendant WL. Plaintiff will seek leave to amend this Complaint to set forth same when ascertained.

121. Plaintiff is informed and believes. and thereon alleges, that Defendant JEFFREY IRWIN WERTHEIMER (" WERTHEIMER") is, and was at all times herein mentioned, an individual residing in the County of Orange. State of California.

122. Defendant WERTHEIMER is, and was at all times herein mentioned, a California-licensed attorney. Said Defendant is being sued herein in his individual capacity, and therefore enjoys no government immunity from liability in this action.

123. Defendants SANDOR SAMUELS ("SAMUELS") and DAVID J. PASTERNAK ("PASTERNAK") are, and were at all times herein mentioned, individuals residing in the County of Los Angeles, State of California.

124. At all times relevant hereto. Defendants SAMUELS and PASTERNAK are and were attorneys duly licensed to practice law in the State of California.

125. Upon information and belief, Defendant BET TZEDEK, aka BET TZEDEK LEGAL SERVICES ("BET TZEDEK"), is, and was at all times herein mentioned, an organization or legal entity which calls itself the "House of Justice" Said Defendant has its offices in Los Angeles County, State of California.

126. Plaintiff is unaware at this time of the exact legal status or identity of Defendant BET TZEDEK, and will seek leave to amend this Complaint accordingly when such information is ascertained.

127. At all times relevant hereto, many of the Defendants herein, including, without limitation, ERIC M. GEORGE, SAMUELS and PASTERNAK, are heavily involved in the unlawful activities of Defendant BET TZEDEK, as herein alleged.

128. Plaintiff is informed and believes, and thereon alleges, that Defendants CAROLYN B. KUHL ("KUHL") and WILLIAM F. FAHEY ("FAHEY") are. and were at all

times herein mentioned, individuals residing in the County of Los Angeles, State of California.

129. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint in order to allege their true names and capacities when same are ascertained.

130. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages herein alleged were proximately caused by their conduct.

131 Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each of the Defendants was the agent, servant, and employee of each of the remaining Defendants, and, in doing the acts herein alleged, was acting within the purpose, course and scope of such agency, service and employment, and with the permission and consent of each of the other Defendants.

## II. **THE TAINTED AND ILLEGAL DISCIPLINARY PROCEEDINGS OF DYDZAK**

132. Plaintiff was admitted to the practice of law in the State of California on December 17, 1985. He took the oath and was sworn to the Bar by none other than a granddaughter of THOMAS E. DEWEY, the former Governor of the State of New York.

133. Upon his arrival to California from Texas to start this exciting new chapter of

his life, DYDZAK was hired by the late acclaimed trial lawyer, Melvin M. Belli, Sr. of San Francisco. He thereafter practiced law in the Los Angeles area with two law firms before starting his own practice in Beverly Hills, California. For over two decades, he practiced law with distinction in both the state and federal courts, primarily in the County of Los Angeles but also throughout the State of California. DYDZAK specialized in Plaintiff's trial work, but had a varied practice in many areas of the law, including divorce work, probate, commercial litigation, personal injury and criminal law.

134. DYDZAK built a substantial, successful practice located in the County of Los Angeles, State of California. DYDZAK had many satisfied clients and successful results in litigation.

135. In or about 2008, the State Bar of California charged DYDZAK with purported disciplinary offenses and sought to disbar him. Many of the disciplinary allegations were distorted and misstated the law, and much of the alleged evidence was fabricated, taken out of context and exaggerated without foundation.

136. Defendant DYDZAK contended in defense, inter alia, that the charges were politically motivated, because he had successfully sued for clients a former State Bar President, Defendant ROTHENBERG and Defendant FIRST CENTURY. At all times relevant hereto, Defendant ROTHENBERG is and was, upon information and belief, Chief Operating Officer of said bank. Part of the allegations in that litigation were that ROTHENBERG, although an attorney, had willfully stolen valuable Hollywood memorabilia from DYDZAK's client, one

Anthony Rogell, the son of a famous movie producer and well-known actress from the Golden Days of Hollywood. The case settled confidentially.

137. Upon information and belief, Defendants RONALD M. GEORGE, ERIC M. GEORGE, ROTHENBERG, GIRARDI and others associated with Defendants CENTURY BANK and BANCSHARES were angry that ROTHENBERG and the bank had been sued and spent tremendous funds, time and resources in defending the Rogell litigation. They wanted and got revenge in the form of the disciplinary proceedings against DYDZAK.

138. In fact, shortly before the settlement, DYDZAK was almost physically hurt by Defendant ROTHENBERG at his law office after taking ROTHENBERG's deposition. ROTHENBERG, angry that Plaintiff had exposed his fraudulent conduct in deposition questioning, moved menacingly close to him and stated at that time: "I'm going to get you."

139. Upon information and belief, Defendant ROTHENBERG's and FIRST CENTURY's attorneys defending the Rogell lawsuit, TIMOTHY D. REUBEN and STEPHEN L. RAUCHER of the Los Angeles law firm , REUBEN, RAUCHER & BLUM, were sadistically privy to the hatched unethical and illegal scheme. However, because they were making massive fees and currying favor with the George crowd, they did not inform DYDZAK of the twisted Machiavellian plot. In fact, sycophant RAUCHER recently assisted in presenting Defendant RONALD M. GEORGE with an award for purported judicial excellence at a black-tie affair at the Montage Hotel in Beverly Hills despite knowing of the latter's unethical and unlawful actions against DYDZAK.

140. Plaintiff is informed and believes, and thereon alleges, that Defendant ROTHENBERG, is, and was at all times herein mentioned, "State Bar Royalty", given his long-time association and connections with Bar officials and financial contributions to the Bar. Upon further information and belief, in his vendetta against Plaintiff, Defendant ROTHENBERG used his considerable influence, improper ex parte communications, and friendship with then Chief Trial Counsel, Defendant DREXEL, to ensure that DYDZAK was prosecuted and disbarred.

141. Plaintiff is informed and believes, and thereon alleges, that, of note, Defendant DREXEL was subsequently terminated as Chief Trial Counsel for abusing his position in several Bar disciplinary cases, including DYDZAK's.

142. Of further note, upon information and belief, in or about March, 2012, DYDZAK found out that he was put on an "enemies list" for unfair Bar prosecution, instigated by Defendants RONALD M. GEORGE, GIRARDI, ERIC M. GEORGE, JAY, ROTHENBERG, WEINER, DREXEL, HERNANDEZ, HUNT, MOLLOY, MORTGENSTERN, and other individuals. DYDZAK was not alone. For example, prominent attorney Philip Kay of San Francisco was targeted by Defendants GIRARDI, RONALD M. GEORGE, ERIC M. GEORGE and BURKLE, resulting in an unfair, illegal and totally draconian three-year suspension to KAY.

143. The charges against Plaintiff were also politically motivated, because he had sued in other litigation for another former client Defendant SCHWAB of Fortune 500 fame and one of his attorneys, Defendant BURK. DYDZAK did not know at the time that Defendant

SCHWAB's attorneys were well-connected to the Bar Enforcement Unit. Defendants SCHWAB, BURK, HAUSMAN and SELEGUE wanted DYDZAK disbarred, so that Plaintiff could not continue representing his client, one Shanel Stasz, in the aforesaid multi-million dollar litigation against him and in another pending case in Los Angeles Superior Court. This litigation would have exposed unlawful activity by Defendant SCHWAB and his attorneys, including, without limitation, SCHWAB's SEC violations and incriminating personal information about SCHWAB's sexual orientation.

144. Until in or about early, 2012, DYDZAK was also unaware that the state bar prosecution against him was further tainted, because, upon information and belief, Defendant ROTHENBERG is and was engaged in money-laundering, bank fraud and other illegal activities with Defendant RONALD M. GEORGE and the latter's son, Defendant ERIC M. GEORGE. The Georges are, and were at all times herein mentioned, investors with ROTHENBERG and others in Defendants FIRST CENTURY and BANCSHARES. Defendant RONALD M. GEORGE, who was for many years Chief Justice of the Supreme Court of California, could therefore not judge DYDZAK's disciplinary case in any manner, because of his foray into the aforesaid unlawful activity and due to his impermissible financial conflicts of interest.

145. DYDZAK's State Bar disciplinary case was "rigged" and deliberately transferred to a dishonest and unethical State Bar Judge, Defendant MILES. Upon information and belief, it turned out that Defendant MILES was BURK's best friend and his former law partner at a major San Francisco law firm. Upon further information and belief, Defendant MILES did not reveal at

the time of DYDZAK's disciplinary proceedings that MILES and his former law firm, HOWARD RICE NEMEROSKI CANADY FALK & RABKIN ("HOWARD RICE"), had previously represented Defendant SCHWAB and his various companies in legal matters while he was managing partner thereat. These conflicts of interest were never revealed to DYDZAK before, at or after trial by Defendant MILES. Defendant MILES--unethically following the script in this fixed case and not disqualifying himself--recommended DYDZAK's disbarment to the Supreme Court of California in his August 5, 2008 decision. The champagne corks were popping, so to speak, at HOWARD RICE and in the Boardroom of Charles Schwab & Co. .

146. Upon information and belief, Defendant MILES' tainted and unlawful decision was largely ghostwritten by others such as State Bar attorneys and their staff. Upon further information and belief, Defendants MOLLOY, WEINER, DREXEL, HUNT. MORTGENSTERN and HERNANDEZ were involved in this illicit conduct. In fact, numerous parts of the decision repeat verbatim language in the disciplinary charges. Defendant MILES put DYDZAK on inactive status as an attorney in the California state courts.

147. At and before the time MILES' decision came out, Defendant MILES also did not reveal that he had, upon information belief, improper ex parte, extrajudicial communications with Defendants BURK, SELEGUE and HAUSMAN. Upon further information and belief, they unethically and illegally advised him to recommend DYDZAK's disbarment to the Supreme Court of California.

148. Plaintiff contested Defendant MILES' decision in the Supreme Court of

California by filing various meritorious Writs. Plaintiff pointed out Defendant MILES' obvious conflicts of interest, and other major prosecutorial, attorney and judicial misconduct in his disciplinary proceedings. DYDZAK was clearly denied his Due Process Right to a fair trial. Nevertheless, Plaintiff was summarily and illegally disbarred by the Supreme Court of California with one-line "Petition denied" language on or about May 24, 2010. Defendant RONALD M. GEORGE did not even, upon information and belief, date and sign the Disbarment Order with his original handwriting.

149. DYDZAK was not allowed oral argument in the Supreme Court of California, nor a fully reasoned, written opinion on the merits. Such actions clearly violated the Due Process. and Equal Protection Clauses of the United States Constitution and California Constitution. Such illegal actions also violated the Supremacy Clause.

150. DYDZAK researched and found out that the Supreme Court of California had adopted an illegal and unconstitutional policy and practice of not granting any review to any attorney facing disciplinary charges since its holding in In re Rose (2000) 27 Cal.4th 430. Notwithstanding the serious abridgement of DYDZAK's constitutional and civil rights, his timely Writ of Certiorari to the U.S. Supreme Court challenging his unlawful state disbarment order was summarily denied.

151. Recently, early this year, DYDZAK filed a motion in the Supreme Court of California to be reinstated as an active attorney with the State Bar of California. Plaintiff claimed, inter alia, that the disbarment order was unlawful, unconstitutional and void ab initio.

Said motion demonstrated that Defendant RONALD M. GEORGE had impermissible financial conflicts of interest with Defendants ERIC M. GEORGE, FIRST CENTURY, BANCSHARES and ROTHENBERG before, at and after the effective date of DYDZAK's disbarment. Under applicable authority in the California Government Code and Judicial Canons of Ethics, a judge cannot rule on a case where said jurist or a close family member has financial or other conflicts of interest since his partiality might reasonably be questioned. Such a scenario presents an actual bias or appearance of bias for a judge, mandating disqualification and the voiding of his/her ruling(s). The State Bar of California did not oppose the aforesaid reinstatement motion.

152. Unfortunately, the judicial Watergate-like cover-up continued. The Supreme Court of California summarily denied Plaintiff's completely valid reinstatement motion, without comment or explanation. Upon information and belief, the Denial Order thereof was illegally and unconstitutionally not signed nor dated by Defendant CANTIL-SAKAUYE, the present Chief Justice, and no required vote was taken on the matter by her and the other Associate Justices.

153. The corruption and compromising of Defendant MILES and other Defendants mired in the DYDZAK disciplinary case were also brought to the attention of Defendant SCHWARZENEGGER near the end of his term as Governor of the State. Said Defendant had nominated Defendant MILES as an administrative judge to the so-called State Bar Court. Plaintiff's friend, well-known actor and community activist PERRY F. CARAVELLO, delivered a package to Defendant SCHWARZENEGGER's security detail at one of his favorite

restaurants in Beverly Hills, California. This package contained a detailed letter to said Defendant reciting the corruption and compromising of Defendant MILES and the misconduct of the State Bar of California, as alleged herein. Both Plaintiff and CARAVELLO witnessed Defendant SCHWARZENEGGER opening the package and reading the letter at his restaurant table. DYDZAK never received any written letter from the Governor responding to his correspondence, nor any other communication from Defendant SCHWARZENEGGER or his staff pertaining thereto.

154. Upon information and belief, said Defendant did not request an investigation into Defendant MILES' and others' misconduct towards DYDZAK, either at an administrative, attorney general or law enforcement level. In other words, Defendant SCHWARZENEGGER did nothing. Corrupt Defendant MILES is still on the bench earning a significant pay check and garnering other major benefits from the State of California.

## III. THE DUNN LAWSUIT AND PATTERN AND PRACTICE OF FIXING OF CASES IN CALIFORNIA

155. On March 29, 2012, DYDZAK filed a multimillion dollar lawsuit in the Superior Court of California for the County of Orange, entitled DANIEL D. DYDZAK V. JOSEPH LAWRENCE DUNN, et al. (30-2012 00558931) [hereinafter "DUNN LAWSUIT"]. This lawsuit sought not only to overturn his disbarment as obtained by "extrinsic fraud" or constituting a "fraud upon the court", but requested other major remedies and relief against many

parties, including, without limitation, RONALD M. GEORGE, ERIC M. GEORGE, ROTHENBERG, SCHWAB and the present members of the Supreme Court of California.

156. In the DUNN LAWSUIT, there are causes of action involving an illegal search and seizure of DYDZAK's personal emails and records to a journalist and well-known on-line media publication, THE LESLIE BRODIE REPORT. There are allegations that Associate Justice WERDEGAR had impermissible financial and personal conflicts of interest with Defendant SCHWAB. And, very significantly, there are allegations of serious violations of the federal RICO statute, known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"), involving the former Chief Justice, present Chief Justice, Defendant ERIC M. GEORGE, Defendant ROTHENBERG and others. RONALD M. GEORGE is accused in that litigation of stealing massive monies from the California Treasury while Chief Justice and after he left the bench and became an active attorney again. Upon information and belief, the conversion and graft are so great by the offending parties that same have significantly contributed to serious financial chaos and shortages in the California state budget, leading to major cutbacks of rudimentary judicial services, the layoffs of support staff and court reporters, and the closing of many court houses. Congressman Darrell Issa and Senators Grassley, Feinstein and Boxer, among others, have been alerted to the racketeering activities..

157. The DUNN LAWSUIT is easily accessible on the Internet, since the initial Complaint and First Amended Complaint have been posted on various blogs, including the well-known and received site, Judicial Council Watcher. These pleadings are incorporated by

reference in this litigation and the Court is asked to take judicial notice of same.

158. DYDZAK was hopeful that, upon the filing of the DUNN LAWSUIT, there would be a quick and quiet settlement and resolution of same. The parties involved are among the most prominent judges, jurists, attorneys and businessmen in California. As well, the allegations leveled by Plaintiff opened certain of the parties to substantial damages, embarrassment, and even possible criminal and civil prosecution for violations, such as money-laundering bank fraud, wire fraud, mail fraud, obstruction of justice and activities against the American Patriot Act. Moreover, a major issue revealed by the DUNN LAWSUIT was the involvement by the GEORGES, ROTHENBERG, FIRST CENTURY, BANCSHARES and others in criminal theft and money-laundering to off-shore accounts, the Vatican Bank and other financial institutions. The deliberate, illegal non-return of TARP monies to the U.S. Treasury was another substantial issue raised by the litigation.

159. Upon information and belief, DYDZAK recently and shockingly discovered in the summer of 2012 that the DUNN LAWSUIT **before it was filed** was "fixed" or "rigged" to go to a judge controlled, compromised, corrupted and influenced by the named Defendants (other than Defendant USA), Defendant GREGORY MUNOZ.

160. Furthermore, upon information and belief, DYDZAK has recently discovered, to his utter dismay and shock, from various witnesses and sources that for more than ten (10) years there are certain attorneys, individuals and judges in California who routinely fix or rig the outcome of cases in the Counties of Los Angeles, Orange, San Diego, San Francisco,

and elsewhere, and regularly commit RICO violations, as hereinafter alleged and described. They thereby commit, without limitation: (1) extrinsic fraud or fraud upon the court; (2) obstruction of justice; (3) constitutional and civil rights violations; and (4) denial of substantive and procedural due process and fair proceedings.

161. At all times relevant hereto, this illicit practice and modus operandi have been, and continue to be, engaged in, practiced by, tolerated, approved and ratified by all the named Defendants herein, other than Defendant USA, so that they are unjustly enriched, obtain an unlawful tactical advantage, and prevent their adversaries and actual or perceived enemies in court from prevailing in their litigation. Said Defendants, and each of them, are guided by winning at any cost, controlling the show, and obtaining unjust windfalls and revenue. Fictional Gordon Gecko's oft-quoted maxim from the movie Wall Street, "Greed is good", applies to them, no matter what the moral, criminal or ethical implications. The ingrained culture and practice of these Defendants violating the Rule of Law to suit their selfish ends and agenda started with the ascent of Defendant RONALD M. GEORGE becoming Chief Justice of the Supreme Court of California. Same continues unabated today under the auspices of Defendant CANTIL-SAKAUYE. Regrettably, these offenders look at RICO activities, the fixing of cases and raiding the piggy banks of California and the USA as perfectly acceptable and their unfettered right.

162. Plaintiff is informed and believes, and thereon alleges, that results of litigation have been fixed against those who opposed the GEORGE reign and his successor-in-interest,

his rumored paramour, Defendant CANTIL-SAKAUYE. Other forms of retaliation and punishment were meted out, such as disfavored judges being relegated to undesirable court locations or not being appointed to the Judicial Council if they spoke out against corruption.

163. Upon information and belief, Defendant RONALD M. GEORGE, referred to in some circles as "King George", proclaimed while he was on the bench some years ago that he would view as a "Declaration of War" anyone who opposed him, his hand-picked Judicial Council or the AOC. This was certainly no idle threat. This vicious, Napoleonic remark has been enacted upon in practice, time and again, against judges, attorneys and others who questioned his direction or raised legitimate concerns about AOC graft, mismanagement, payoffs, conversion, kickbacks, spending and his own RICO activities. For example, well-known Superior Court judge, Lance Ito, recently lost his permanent assigned court room in downtown Los Angeles soon after he made private and public comments critical of the AOC. Former AOC employee Paula Negley had her bonafide wrongful termination litigation summarily dismissed without cause by a now-retired San Francisco judge after she would not take a nominal settlement and sign a non-disclosure confidentiality agreement.. It turned out that her trial judge is, and was at all times herein mentioned, a close friend and confidant of Defendant RONALD M. GEORGE. The judge's conflict of interest was never disclosed to Negley, and Negley apparently discovered it after the fact. Upon information and belief, Defendant RONALD M. GEORGE is still behind the scenes running the judicial machinery and influencing the AOC headquartered in San Francisco.

164. Plaintiff is informed and believes, and thereon alleges, that, prior to the DUNN LAWSUIT being filed, certain of the Defendants such as Defendant REISIG and LAYTON illegally discovered and intercepted salient information that DYDZAK intended to file the Complaint in the Orange County Superior Court ("OCSC"). DYDZAK had previously verbally and confidentially confided to a male acquaintance that he intended to file the DUNN LAWSUIT in OCSC for various strategic, factual and legal reasons. This acquaintance in turn confidentially relayed that information to LESLIE BRODIE REPORT ("LBR"), a well-known on-line journalistic site, and a journalist and investigative reporter working for LBR, one S. SIMON LEVI. This venue information was contained in an email or emails sent to LBR and LEVI. DYDZAK found out recently that the strategic and confidential information about the venue of the soon-to-be-filed DUNN LAWSUIT had been forwarded to LBR and Mr. Simon.

165. Upon information and belief, the aforesaid unlawful interception, seizure and taking of the "venue" email or emails occurred as the result of an illegal search and seizure by the Yolo County District Attorney's Office on Mr. Simon's residence in early 2012. After the raid, SIMON telephonically advised DYDZAK that several agents of said Office carried out this raid, he was detained, his computer was confiscated, Defendant LAYTON was present thereat, the raid, and the event was traumatic and unsettling to him. According to SIMON, the raid also resulted in the unlawful taking and confiscating of the aforesaid email or emails, along with other records, propriety documents, legal documents, correspondence, and emails pertaining to the journalist, S. SIMON LEVI, LBR, DYDZAK, and other third persons.

166. Upon information and belief, Defendants REISIG and LAYTON, and their agents and employees, reviewed the seized items and reviewed the hard drive materials on LEVI's computer. Thereafter, upon further information and belief, said Defendants did the following:

(1) Illegally, unethically and ex parte notified, without limitation, the following parties-- their accomplices in crime and civil conspiracy-- that Plaintiff intended to file the DUNN LAWSUIT in OCSC.

(2) Provided, distributed and/or otherwise shared the information contained in the seized records and emails to parties.

Defendants GIRARDI, RONALD M. GEORGE, JAY, ERIC M.GEORGE, ROTHENBERG, HULL, ROBERTS, OVERTON, BORRIS, ROBINSON, GREGORY MUNOZ, FRANCES MUNOZ, MATTHEW MUNOZ, WEST, HARRIS, KRAUSE, BECKINGTON, MORENO, IRELL, CARLSON, MILES, ARNOLD & PORTER, MILLER, TORR, QUINN, BURK, WINTHROP, SELEGUE, HAUSMAN, FUJIE, ALEXANDER, SCHWAB, DREXEL, BABCOCK, LEE, HAWLEY, DUNN, TOWERY, DICKSTEIN, ENGLISH, ASHLEY, MOLLOY, HUNT, MORGENSTERN, HERNANDEZ, WEINER, THOMAS MORE SOCIETY (TMS), CMDA, CHANG, WARDLAW, FSC, CANTIL-SAKAUYE, MWERDEGAR, KVN, HARRIMAN, KATHRYN, CORRIGAN, KENNARD, CHIN, BAXTER, LIU, FIRST CENTURY, BANCSHARES, BRIEN, BROOKS, DIGANGE, DINAPOLI, LEVY, MOORE, PRESSMAN, WATT, WOLFF, ZAX, JAHR,

JOHNSON, VON ESCHEN, ABELSON, HERRON, ABELSON, HERRON, WERTHEIMER, SAMUELS, BET TZEDEK and PASTERNAK [collectively "CORRUPT PARTIES"].

167. The unlawful objectives of providing sharing the information and providing the stolen journalistic records and emails to the aforesaid parties were many, without limitation:

(1) CORRUPT PARTIES wanted to ensure that, once DYDZAK filed the Complaint in the DUNN LAWSUIT, it would be not be assigned to a random judge but their chosen, manipulated and hand-picked OCSC judge.

(2) CORRUPT PARTIES wanted to protect the RONALD M. GEORGE legacy and the new CANTIL-SAKAUYE regime (under his supervision behind the scenes), and continue their unjust enrichment, influence-peddling and looting of public funds, which the DUNN LAWSUIT exposes.

(3) CORRUPT PARTIES wanted to have a biased and partial OCSC judge, who would do their bidding, with instructions to dismiss or "toss" the DUNN LAWSUIT (despite its obvious merit), in order to hide their unlawful and RICO activities, protect them financially from significant damages and other equitable relief, and continue to destroy Plaintiff's career and bonafide right to be reinstated as an active practicing attorney in the State of California.

(4) CORRUPT PARTIES wanted to damage DYDZAK financially by instructing a biased and partial OCSC judge to award damages and attorney's fees against him, including anti-slapp attorney's fees and costs which are not supportable in law or fact against Plaintiff.

(5) CORRUPT PARTIES wanted to hide the judicial corruption of Defendant

World Series.

(10) CORRUPT PARTIES wanted to preserve their respective phony public relations images of high levels of business standards, professionalism, honesty, integrity and ethics. The fixing and dismissal of the DUNN LAWSUIT would achieve this PR objective, and hide them from embarrassing and incriminating scrutiny in the public record.

168. On the day when DYDZAK personally went to the Clerk's Office in OCSC to file the DUNN LAWSUT, the male deputy clerk processing the Summons and Complaint delayed the filing thereof by approximately 15 minutes. He left his station and did not explain why to Plaintiff.

169. Plaintiff is informed and believes, and thereon alleges, that said clerk was already in the know that the OCSC Clerk, Defendant CARLSON, as well as Defendants GREGORY MUNOZ, WERTHEIMER and BORRIS, with the knowledge, illegal authorization, acts of conspiracy and prodding of the other CORRUPT PARTIES, had unlawfully advised all the deputy clerks beforehand to be on the look out for any new case filing by Plaintiff. Said Defendants unlawfully directed and ordered, upon further information and belief, that such litigation would be assigned to Defendant GREGORY MUNOZ and no other OCSC judge. Upon further information and belief, the assignment of Defendant GREGORY MUNOZ to the DUNN LAWSUIT was **not** a random selection from the list of OCSC judges available but unlawfully predetermined, as herein alleged. Upon further information and belief, Defendants

CARLSON, BORRIS, GREGORY MUNOZ, WERTHEIMER, ROBERTS, OVERTON, JAY, HARRIS, CANTIL-SAKAUYE, KATHRYN, HARRIMAN, ARNOLD & PORTER, QUINN, JAHR, CORRIGAN, BAXTER, LIU, KENNARD, CHIN, ROBINSON, FRANCES MUNOZ, MATTHEW MUNOZ, TMS, BABCOCK, DICKSTEIN, TOWERY, REISIG, LAYTON, KRAUSE, ROBERTS, OVERTON, MWERDEGAR, MORENO, RONALD M. GEORGE, ERIC M. GEROGE, GIRARDI, ROTHENBERG, VON ESCHEN, BECKINGTON, LEE, VICKREY, OVERHOLT, DUNN and the remaining CORRUPT PARTIES had unlawful, improper ex parte discussions about the case being fixed and assigned to Defendant GREGORY MUNOZ **before** the Complaint was filed.

170. In the past, when DYDZAK had filed pleadings in the OCSC for former clients, he never experienced any clerk disappearing from his or her station and conferring with superiors in the backrooms. On the date of filing the Complaint, DYDZAK assumed that the Clerk left his station to use the restroom or for other personal reasons. In good faith, DYDZAK had no reason to suspect at that time that his case had been compromised and sent to a predetermined judge for assignment. As events later turned out, DYDZAK discovered the fix was in.

171. Among the disquieting and unlawful actions that happened after the DUNN LAWSUIT was filed which make absolutely no sense in fact or law and show a corrupt process : (1) Defendants CARLSON and GREGORY MUNOZ have not required and did not require the clients represented by Defendant LEE to pay the required statutory appearance fees, even though they are being sued in their individual capacities, which adds up to several thousand dollars in

unpaid filing fees; (2) Defendant LEE, a government attorney, has been allowed to date to unethically represent her clients, even though she has clear-cut conflicts of interest, she is a material witness and possible defendant and her clients are being sued in their respective individual capacities; (3) Defendant LEE unlawfully and unethically refuses to disqualify herself despite her unethical actions and conflicts of interest, knowing full well she cannot represent private individuals, such as Defendant MIILER, as a government attorney; (4) Defendants HARRIS, KRAUSE and BECKINGTON are representing Defendant RONALD M. GEORGE, even though he has engaged in RICO activities and the Attorney General of California is charged with investigating criminal conduct enforcing the criminal laws of the State of California; (4) Defendant HARRIS and her office, including Defendants KRAUSE and BECKINGTON, refuse to disqualify themselves despite conflicts of interest and the fact that many of the Defendants herein have given thousands of dollars to HARRIS for her political campaigns, such as Defendant ROTHENBERG, attorneys with Defendant ERIC M. GEORGE's law firm in Century City and attorneys from Defendant KVN; (5) Defendant GREGORY MUNOZ refused upon Ex Parte Application for Order Shortening Time to allow the disqualification motions pertaining to Defendants LEE, HARRIS, KRAUSE and BECKINGTON to be heard on the merits before other pending motions; (6) Defendant VON ESCHEN went ahead and knowingly let her secretary forge her signature on a court pleading filed by her, Defendant ABELSON and Defendant ABELSON & HERRON on behalf of Defendant ERIC M. GEORGE; there was no referral of this serious ethical and professional violation to the State Bar of California by Defendant

GREGORY MUNOZ or the setting of an OSC thereto; (7) Defendants ABELSON, HERRON, ABELSON and VON ESCHEN electronically filed on the docket a lengthy pleading on behalf of Defendant ERIC M. GEORGE, deliberately excising and redacting numerous pages from the document, so as to hide GEORGE's RICO and other unlawful activities from the public record. Defendant CARLSON permitting such an invalid filing and Defendant MUNOZ has not questioned such filing; (8) Defendants GIRARDI, ROTHENBERG, RONALD M. GEORGE and ERIC M. GEORGE have, upon information and belief, used their contacts with entities such as GOOGLE and BING to block negative internet references to this lawsuit and about them; (9) Defendants GREGORY MUNOZ, BORRIS, CARLSON and FRANCES MUNOZ, upon information and belief, never divulged their close friendships and professional relationships with Defendants CARLOS MORENO, RONALD M. GEORGE, ROBINSON, DUNN and GIRARDI and their ex parte communications about fixing the litigation; (10) Defendants GREGORY MUNOZ and CARLSON not requiring Defendant GIRARDI to pay the full, required statutory filing fees for his first appearance, and having MUNOZ's assistant clerk lie to DYDZAK about the matter; (11) Defendants GREGORY MUNOZ and BORRIS not disqualifying themselves, despite having conflicts of interest, improper ex parte communications and being parties to the litigation; (12) Defendant GREGORY MUNOZ disputing that his and his sister's long-time friendship and association with Defendant MORENO was irrelevant to his ability to be fair in the litigation; (13) Defendant GREGORY MUNOZ deliberately not addressing in his verified response to Plaintiff's Disqualification Motion of him several grounds

for his disqualification and improperly and unethically ruling on his own disqualification; (14) Making sarcastic and inappropriate statements in court, such as "You're suing everybody" and "I'm not going to disqualify myself", which showed hostility and bias towards DYDZAK or the appearance of same; (15) Defendants GREGORY MUNOZ and BORRIS, upon information and belief, traveling to San Francisco recently to have impermissible ex parte communications and report to Defendant JAHR, the Judicial Council, Defendants RONALD M. GEORGE, GIRARDI, ROBINSON, JAY and ROBERTS, members of the Supreme Court of California and others about the DUNN LAWSUIT, the fixing thereof and the unlawful transfer of the case to San Diego Superior Court; (16) Defendant BORRIS, despite being a party to the litigation, issuing an unlawful transfer Order on or about August 15, 2012, and having, upon information and belief, improper ex parte communications about same to Defendants RONALD M. GEORGE, CARLSON, TRENTACOSTA, RODDY, GREGORY MUNOZ, GIRARDI and FRANCES MUNOZ, JAHR, WERTHEIMER, NEVITT, OVERTON, JAY AND ROBERTS, among others; (17) upon information and belief, Defendants BORRIS, GREGORY MUNOZ, WERTHEIMER and CARLSON not allowing DYDZAK to recently file two key pleadings in the DUNN LAWSUIT at the Clerk's Office of OCSC, thereby committing obstruction of justice and RICO violations; (18) upon information and belief, Defendants BORRIS, GREGORY MUNOZ, WERTHEIMER and CARLSON impeding DYDZAK from filing, and not allowing him to file, his bonafide Motion to set aside Defendant BORRIS' unlawful transfer Order filed August 15, 2012, to San Diego Superior Court, thereby depriving DYDZAK of his legitimate

right to have his case heard in his chosen venue; (19) upon information and belief, Defendants BORRIS, GREGORY MUNOZ, WERTHEIMER and CARLSON unlawfully instructing several deputy clerks to not allow filing of the two aforementioned pleadings. such instructions constituting obstruction of justice and violation of due process; (20) upon information and belief, Defendants BORRIS, GREGORY MUNOZ, WERTHEIMER and CARLSON unconscionably and without foundation causing DYDZAK and PERRY F. CARAVELLO to be threatened on two occasions with the summoning of Orange County Sheriff deputies if DYDZAK insisted on filing said pleadings, thereby putting DYDZAK and CARAVELLO in reasonable apprehension of being illegally detained and possibly or actually arrested. This intimidation was malicious and in bad faith, and obligated DYDZAK and CARAVELLO to promptly leave the OCSC building in Santa Ana, California, in order to protect their own safety, welfare and well-being; and (21) upon information and belief, Defendants TRENTACOSTA, BORRIS, GREGORY MUNOZ, CARLSON, OVERTON, RODDY, BABCOCK, HAWLEY, ERIC M. GEORGE, VON ESCHEN, ABELSON, ABELSON HERRON attorneys, QUINN, ARNOLD & PORTER attorneys, SELEGUE. HAUSMAN, SCHWAB, LEE, BECKINGTON, KRAUSE, HARRIS, JAHR. MWERDEGAR. KATHRYN, ROBINSON, TROTTER, HULL. MCCONNELL, HUFFMAN, MILLER, FRANCES MUNOZ, MORENO, CANTIL-SAKAUYE, RONALD M. GEORGE, ROBERTS, JAY, WRIGHT & L'ESTRANGE, POOLE, JAMS personnel, IRELL attorneys and possibly others having improper ex parte or extrajudicial communications among and with each other to "fix" or "rig" the outcome of the DUNN

LAWSUIT against DYDZAK, by unlawfully transferring the case to San Diego Superior Court and assigning it to another hand-picked, compromised, partial and biased judge in said jurisdiction.

172. Prior to the illegal transfer of the DUNN LAWSUIT to San Diego Superior Court, DYDZAK contacted Defendants JAMS and Defendant TROTTER to explore the possibility of the latter mediating the case of DYDZAK V. DUNN DYDZAK with all interested parties and their counsel. DYDZAK left approximately three voicemail messages with Defendant TROTTER's support staff asking them to inquire into the matter and get back to him. Instead of their contacting him at all in response, Defendants TROTTER and POOLE, upon information and belief, individually and on behalf of Defendant JAMS had improper, unethical and illegal ex parte communications with and among Defendants BORRIS, GREGORY MUNOZ, HUFFMAN, RONALD M. GEORGE, ERIC M. GEORGE, VON ESCHEN, FRANCES MUNOZ, DICKSTEIN, DUNN, TOWERY, ABELSON, MCCONNELL, TRENTACOSTA, NEVITT, MILLER, GIRARDI, ROBINSON, MORENO, KATHRYN. ROBERTS, CANTIL-SAKAUYE, OVERTON, JAY, LEE, HARRIS, KRAUSE, BECKINGTON, HULL, TOWERY, DICKSTEIN, ENGLISH, HAWLEY, BABCOCK, partners of WRIGHT & L'ESTRANGE and possibly others, conspiring to transfer the case illegally to the San Diego Superior Court. Upon further information and belief, Defendants BORRIS , RODDY and TRENTACOSTA complied with the illicit transfer request and unlawfully transferred the case to San Diego Superior Court. This court is referred

to by some commentators as "Enron by the Sea".

173. Defendants TROTTER, POOLE and JAMS were ethically and legally required to assist DYDZAK, treat him fairly and honestly, and not engage in RICO and other unlawful conduct. At all times relevant hereto, said Defendants, and each of them, are and were not allowed to engage in improper ex parte communications and contacts and partake in an unlawful enterprise with others to interfere with and affect the outcome of the DUNN LAWSUIT and harm DYDZAK. Not surprisingly, neither did Defendant TROTTER nor Defendant POOLE, or their staff, ever contact DYDZAK to set up a potential mediation session. DYDZAK never entered into any written or verbal agreement to arbitrate or mediate the DUNN LAWSUIT with JAMS, POOLE or TROTTER.

174. Upon information and belief, Defendant TROTTER is a retired Orange County Court of Appeal judge, now an active attorney, who owes much of his success and extremely substantial income to being closely aligned to Defendants RONALD M. GEORGE, CANTIL-SAKAUYE, DUNN, the Judicial Council, Defendants GIRARDI, ROBINSON and other judicial and attorney movers-and-shakers. Defendant TROTTER, is, and was at all times herein mentioned, aware of the money-laundering and RICO activities of Defendants ROTHENBERG, RONALD M. GEORGE, GIRARDI, ROBINSON and others.

175. Upon information and belief, Defendant TROTTER is no stranger to controversy and questionable ethical tactics as an attorney and prior judge. Upon further information and belief, TROTTER has used his senior position at JAMS to insist that, if retired Judges do not

bend to the rules of being in the GEORGE club, they will be cut off from and not invited to be a JAMS Judge, a lucrative position, and not referred cases for mediation and arbitration.

176. Plaintiff is also informed and believes, and thereon alleges, that Defendant TROTTER has unethically taken gifts from attorneys involved in litigation matters before him for mediation or arbitration. For example, upon information and belief, Defendant TROTTER accepted an expensive Mediterranean cruise trip from Defendant GIRARDI and Walter Lack. Esq. after he assisted in resolving the Erin Brockovich case, and GIRARDI and Lack picked up most, if not all, the expenses for same.

177. Plaintiff is informed and believes, and thereon alleges, that Defendant TROTTER's scheme and conspiracy with other Defendants, as herein alleged, to use his contacts, influence, advice and pressure to have the DUNN LAWSUIT transferred to San Diego Superior Court has its roots in his knowledge of the corruption and fixing of litigation in said Court. Defendant TROTTER is aware there was some years ago widespread corruption of the San Diego Court involving certain judges taking bribes and kickbacks from numerous attorneys, such as former Judges Mickey Greer and G. Dennis Adams. Yet TROTTER turned a blind eye to that corruption. Upon information and belief, Defendant TROTTER threw a press conference when that scandal was brewing, attesting to the fine reputation of San Diego Superior Court Judges. Thereafter, certain San Diego Superior Court Judges pleaded to felony convictions.

178. Upon information and belief, Defendant POOLE was former long-time administrator for LATHAMS WATKINS before he worked for Defendant JAMS. Upon further

information and belief, Defendant POOLE therefore knows Defendants ROTHENBERG, VON ESCHEN, ABELSON and HERRON well, since the latter Defendants are all former partners of that law firm. POOLE clearly had an incentive to assist Defendant TROTTER and JAMS in unlawful conduct towards DYDZAK, as herein alleged.

179. The reputation of JAMS, upon information and belief, has been so compromised in recent years that many Plaintiff's attorneys will not use its services.

180. Defendant JAMS' POOLE's and TROTTER's conduct towards DYDZAK herein is so egregious and harmful that Defendant JAMS should be dissolved by equitable Order of this Honorable Court. Said Defendants should be assessed appropriate damages and RICO penalties, as herein alleged and prayed.

181. Upon information and belief, Defendant NEVITT is, and was at all times hereto, a former partner of Defendant WRIGHT & L'ESTRANGE. Plaintiff is further informed and believes, and thereon alleges, that Defendant NEVITT is, and was at all times herein mentioned, known to be a favorite of the Judicial Council, beholden to financial institutions such as Bank of America, and also obligated to the Supreme Court of California and Bar-insiders and Bar officials, especially since one of his prior partners writes CEB books for the State Bar of California. His recent assignment to act as judge in the DUNN LAWSUIT is, and was at all times herein mentioned, void and unlawful, as herein alleged.

///

///

## III. THE FIXING OF DYDZAK V. ROTHENBERG, LOS ANGELES SUPERIOR COURT CASE NO. BC 463363 AND COURT OF APPEAL CASE NO. B238926

182. Another multimillion dollar lawsuit filed by DYDZAK involving some of the same Defendants in DUNN has been "fixed" and unceremoniously tossed to the legal curb. This lawsuit entitled DYDZAK V. ROTHENBERG et al. (LASC Case No. BC 463363) ["DYDZAK LAWSUIT"] was originally filed on or about June 13, 2011, and alleged various causes of action such as fraud and intentional interference with economic relations. The crux of the lawsuit was that DYDZAK was injured and damaged because of illegal ex parte communications and contacts between Defendant MILES and Defendant HOWARD RICE and its attorneys, HAUSMAN, SELEGUE and BURK. DYDZAK further alleged that Mr. ROTHENBERG and his banks were also involved in tortious conduct to injure Plaintiff.

183. DYDZAK disqualified the original judge based on a standard peremptory Challenge pursuant to California Code of Civil Procedure 170.6. After a long delay in reassignment, the case was reassigned by Defendant KUHL, the presiding Judge of the Los Angeles Superior Court, to a new judge, Defendant FAHENY. Upon information and belief, Defendant FAHEY not only had conflicts of interest, but also improper ex parte communications with Defendant KUHL about ensuring that the case was fixed and dismissed. This was no random selection to Defendant FAHEY, who acted like a legal executioner towards DYDZAK as future events and rulings unfolded.

184. Plaintiff is informed and believes, and thereon alleges, that Defendant KUHL

spoke directly to Defendants RONALD M. GEORGE, ROTHENBERG, FAHEY and possibly others, about fixing the result of the DYDZAK LAWSUIT against Plaintiff.

185. At all times relevant hereto, upon information and belief, Defendants FAHEY, FAHEY's wife, a former judge, and KUHL have, and had at all times herein mentioned, professional and personal relationships with Defendants RONALD M. GEORGE, ERIC M. GEORGE, ROTHENBERG, GIRARDI, FIRST CENTURY and other individuals, whereby DYDZAK could not receive a fair trial or other proceedings before Defendant FAHEY. Notwithstanding these conflicts of interest, Defendant FAHEY unethically ruled on his own disqualification and held court proceedings without jurisdiction. In addition, upon information and belief, Defendant FAHEY has willfully removed pleadings from the LASC Court docket, including papers dealing with his disqualification and the voiding of his Orders. Defendant FAHEY made threats and placed bailiffs near DYDZAK to intimidate him during hearings. Defendant FAHEY issued draconian attorney's fees of approximately $ 40,000 against DYDZAK without cause, and as a form of retaliation against DYDZAK for implicating and exposing Defendants ROTHENBERG and the GEORGES in RICO activities and to protect scrutiny of the unlawful actions of Defendant MILES and HOWARD RICE attorneys, SEAN SELGUE and KENNETH HAUSMAN (now Defendant ARNOLD & PORTER attorneys).

186. Plaintiff timely appealed the Judgment and award of attorney's fees in the DYDZAK LAWSUIT after it was dismissed on or about December 7, 2011. Despite the fact that

DYDZAK was timely prosecuting the appeal, and taking all other necessary steps to prosecute the appeal, the Court of Appeal ridiculously, recently dismissed the appeal without oral argument and normal briefing. A motion to set aside the Dismissal Order for Extrinsic Fraud was summarily denied without comment, even though DYDZAK pointed out that Defendants CROSKEY and KLEIN had conflicts of interest in dismissing the appeal. Defendant KITCHING was part of the panel denying the extrinsic fraud motion and also had and has conflicts of interest towards Plaintiff.

187. At all times herein mentioned, Plaintiff is informed and believes, and thereon alleges, that Defendants CROSKEY, KLEIN and KITCHING had improper ex parte communications, contacts and conflicts of interest which made it impossible for them to impartially and fairly consider the merits of DYDZAK's appeal. Upon further information and belief, Defendants CROSKEY, KLEIN and KITCHING, are long-time personal and professional friends of many of the Defendants in the DUNN LAWSUIT, including Defendants GIRARDI, QUINN, DUNN, CANTIL-SAKAUYE, ROTHENBERG, RONALD M. GEORGE and ERIC M. GEORGE, and conspired together to destroy DYDZAK's appeal and have it dismissed.

188. In particular, upon information and belief, said Defendants know, and knew at all times herein mentioned, about the pending DUNN LAWSUIT, and were pressured by the Defendants to that litigation, particularly Defendants RONALD M. GEORGE, CANTIL-SAKAUYE, QUINN and ARNOLD & PORTER, to dismiss the appeal in the DYDZAK LAWSUIT.

189. Plaintiff is informed and believes, and thereon alleges, that Defendant KITCHING is a former Bank of America ("BOA") counsel; one of Defendant ARNOLD & PORTER's biggest clients is, and was at all times herein mentioned, BOA. Defendant SAMUELS is former counsel to BOA. Defendant KLEIN receives and has received substantial monies for her Foundation from ARNOLD & PORTER, and recently gave an award to Defendant RONALD M. GEORGE. Defendant KLEIN has socialized with Defendant CANTIL-SAKAUYE. Defendant CROSKEY served with KLEIN on the Court of Appeal with Defendant RONALD M. GEORGE. Defendant CROSKEY has been active with the Judicial Council and receives income from CEB authorship.

190. By this lawsuit, DYDZAK seeks to void the unlawful Orders of Defendants KLEIN, CROSKEY, KITCHING and FAHEY, among other remedies. Defendant KUHL is liable in damages, individually and administratively, for partaking in "extrinsic fraud" or "fraud upon the court." These Defendants have also engaged in RICO, obstruction of justice tactics, opening themselves to personal liability, damages and other appropriate equitable relief.

## IV. THE INVOLVEMENT AND DUPLICITY OF ATTORNEY GENERAL HARRIS, KRAUSE AND BECKINGTON IN CONVERTING FRAUD FORECLOSURE SETTLEMENT FUNDS WITH THE APPROVAL OF GEITNER, HOLDER, HER BROTHER-IN-LAW, WEST, MORENO AND IRELL & MANELLA

191. Plaintiff is informed and believes, and thereon alleges, that Governor Jerry Brown of California has made repeated demands within the last year for the Attorney General of

California, Defendant HARRIS, to provide the State of California with an accounting and return to the California treasury approximately $ 560 Million Dollars recovered by her office from various banks and financial institutions as a result of foreclosure and loan modification fraud.

192. Upon further information and belief, Defendant HARRIS has referred to these funds, and they have been reported by various media, as Fraud Foreclosure Settlement Funds ("Fraud Fund"). Defendant HARRIS has also publicized that she supports a Homeowners Bill of Rights over said funds. Notwithstanding said PR remonstrations by her, Defendant HARRIS has failed and refused, and continues to fail and refuse, to account for and return said funds to the California Treasury.

193. Plaintiff is informed and believes, and thereon alleges, that Defendant HARRIS refuses to account for and return the aforesaid funds to the California Treasury, because she has converted much of those funds to her personal accounts, for her own personal and unjust enrichment. Upon further information and belief, Defendant HARRIS has directed these funds to persons and organizations to benefit her career advancement and political aims, including illegal campaign contributions to the OBAMA Administration from said funds.

194. Plaintiff is also informed and believes, and thereon alleges, that Defendant IRELL, by and through its partners JOHN HUESTON and Defendant MORENO, Defendant KVN and others have reaped significant legal fees from Defendant HARRIS diverting monies from the Fraud Fund to those Defendants.

195. Upon information and belief, the above-recited unlawful actions by Defendant

HARRIS have been done with the assistance, encouragement, ratification and approval, of Defendants GEITNER, HOLDER, WEST, BECKINGTON, and KRAUSE, to assist in Democratic fund-raising illegally, benefit themselves financially, for purposes of their political connections and their respective agendas of career and political advancement.

196. Upon further information and belief, Defendant HARRIS has also been involved in the disappearance, misuse and misappropriation of State Bar, State Bar Foundation and other public monies, through such entities as the bogus charity, CaliforniaAll. The extent of such misconduct has widely been reported on the on-line Journalist blog, The Leslie Brodie Report.

197. Because of her dishonest, unlawful and RICO activities, Defendant HARRIS is concerned about the allegations raised in THE DUNN LAWSUIT. She is fully aware of the RICO activities by the GEORGES, ROTHENBERG, GIRARDI and others. Therefore, she has, and had at all times herein mentioned, a vested, malicious and illegal interest to fix Plaintiff's litigation matters and represent parties who she knows are breaking the criminal laws of the State of California. Her immediate aids-in-arm, Defendants BECKINGTON and KRAUSE, support these unlawful actions in derogation of their duties and responsibilities as deputy attorney generals to enforce the criminal and penal laws of the State of California. Instead of enforcing those laws, they are unlawfully condoning the breaking of them by Defendant HARRIS and the fixing of the DUNN LAWSUIT, as herein alleged.

198. Apparently, the old guard of the Democratic Party in California, Senators Boxer and Feinstein, are perturbed at the tactics heretofore described of Defendant HARRIS and other

fund-raisers such as Defendant DICKSTEIN and attorney JAMES BROSNAHAN of San Francisco.

199. At all times relevant hereto, upon information and belief, Defendant HARRIS is and was aware that Defendants BURKLE, DICKSTEIN, and DUNN direct and give illegal campaign contributions to state legislators, Defendants CEDILLO, DAVIS, FUENTES and BLUMENFIELD, from State Bar and State Bar Foundation funds, BURKLE's vast fortune and other sources. This is done to curry the legislators' votes and political backing that the corruption and self-dealing in the AOC and State Bar of California will continue, and so that no legislation is passed to change the AOC or Judicial Council. Upon further information and belief, Defendant HARRIS--a former lover and protegé of Willie Brown and herself a recipient of illegal campaign contributions in the past--tolerates this conduct and does not prosecute anyone in this arena.

## V. THE NON-RETURN OF TARP MONIES TO THE U.S. TREASURY

200. At all times relevant hereto, Plaintiff is informed and believes, and thereon alleges that Defendants FIRST CENTURY, ROTHENBERG, ERIC M. GEORGE, RONALD M. GEORGE, WASSER. BANCSHARES, BRIEN, BROOKS, DIGANCE, DINAPOLI, LEVY, MOORE. PRESSMAN, WATT, WOLFF, ZAX, SCHWARZENEGGER, SHRIVER, BET TZEDEK, SAMUELS, PASTERNAK, WARDLAW. SFC and other individuals unknown at this time pending discovery, are and were aware that the aforesaid bank entities received substantial

monies from Defendant USA as a result of the federal bank bailout program known as the Troubled Asset Relief Program ("TARP").

201. Plaintiff is informed and believes, and thereon alleges, that the aforementioned Defendants, many of whom are either directors, officers, deposit holders and/or investors in the aforementioned bank entities, are aware and have authorized and approved that the TARP monies have not been returned to Defendant USA, without good cause. They are, and were at all times herein mentioned, aware and have authorized the subject TARP monies to be unlawfully distributed or disbursed to them for their own personal use and unjust enrichment . Furthermore, upon information and belief, the TARP monies have been disbursed by said Defendants, and each of them., illegally to off-shore accounts, the Vatican Bank and other financial havens, without appropriate reporting. At all times herein mentioned, such actions constitute and constituted, without limitation, tax fraud, tax evasion, mail fraud, bank fraud and money-laundering.

202. The pervasive culture by some of non-return of the TARP monies has been highlighted recently in the New York Times bestseller, Bailout, by a former TARP Inspector General, attorney Neil Barofsky.

203. Plaintiff is informed and believes, and thereon alleges, that Defendants GEITNER, WEST and HOLDER entered into an illegal agreement with Defendants ROTHENBERG, FIRST CENTURY, BANCSHARES, ERIC M. GEORGE, RONALD M. GEORGE, and the other directors, officers and investors of these bank entities, that the TARP

monies need not be returned to the U.S. Treasury. Defendants GEITNER, WEST and HOLDER entered into such an unlawful agreement because many of the Defendants associated with Defendant FIRST CENTURY and BANCSHARES are major contributors to the Democratic Party and have tremendous political and business influence, in California and elsewhere.

204. At all times herein mentioned, upon information and belief, Defendants GEITNER, WEST and HOLDER knew that such agreement with Defendants FIRST CENTURY and BANCSHARES was unlawful and that these two entities with others such as Defendant ROTHENBERG were engaged in RICO activities, as alleged herein and with specificity in the allegations of the DUNN LAWSUIT.

205. At all times herein mentioned, upon information and belief, Defendants GEITNER, WEST and HOLDER agreed that Defendants FIRST CENTURY and BANCSHARES would not be criminally prosecuted for any RICO activities, bank fraud, mail fraud, money-laundering, banking and securities regulatory breaches, and Patriot Act violations, Upon further information and belief, said Defendants, and each of them, agreed that Defendants FIRST CENTURY AND BANCSHARES could keep the TARP monies without repayment to Defendant USA and without any accountability to the public at large or the U.S. government.

206. At all times herein mentioned, Defendants GEITNER, WEST and HOLDER have been aware that Plaintiff was alleging RICO and other violations by Defendant ROTHENBERG and said bank entities in the DUNN LAWSUIT, through ex parte communications and contacts with Defendants HARRIS, KRAUSE and BECKINGTON, among others.

## VI. RICO ACTIVITIES BY DEFENDANTS SCHWARZENEGGER, SHRIVER, WASSER, RONALD M. GEORGE, ERIC M. GEORGE, ROTHENBERG AND OTHERS

207. The First Amended Complaint in the DUNN LAWSUIT specifies a vast array of RICO activities, and same is incorporated by reference herein. In that lawsuit, among numerous causes of actions and allegations, it is alleged that Defendant RONALD M. GEORGE, the former Chief Justice of the Supreme Court of California, stole massive amounts of taxpayer monies and never allowed the Court to give an accurate accounting.

208. Upon information and belief, Defendant SCHWARZENEGGER was compromised and obligated to pick Defendant RONALD M. GEORGE's hand-picked successor as Chief Justice, Defendant CANTIL-SAKAUYE. Defendants GIRARDI and MILLER, two of GEORGE's accomplices in RICO activities, had access to several incriminating files negotiated by Defendant TROTTER pertaining to sexual harassment claims involving the Governor. Upon information and belief, Defendant MILLER used his position as State Bar President to confront Defendant SCHWARZENEGGER with that information, subtly convincing him to appoint CANTIL-SAKAUYE or else.

209. Upon information and belief, at all times relevant hereto, Defendant SCHWARZENEGGER did not insist that the AOC, Judicial Council or Defendant RONALD M. GEORGE give an accurate accounting to the Legislature as to how funds allocated to the judiciary were spent. This allowed Defendant RONALD M. GEORGE to have easy access to the funds and money-launder vast sums of money, meant for the judiciary, to his personal use and

that of his son, ERIC M. GEORGE.

210. Upon information and belief, Defendant RONALD M. GEORGE only declared relatively modest income on his income tax returns, yet owns with his family approximately 30 Million worth of California residential real estate, including, without limitation, a Malibu beach house, a Nob Hill condominium, and three Beverly Hills properties.

211. Plaintiff is informed and believes, and thereon alleges, that Defendants CANTIL-SAKAUYE and RONALD M. GEORGE, with the AOC, have used a Geneva-based attorney, Defendant TORR, to give banking regulatory advice and assist in RICO activities.

212. Upon information and belief, Defendant SCHWARZENEGGER claims he became Governor altruistically and lost monies as a working actor during his time period in government; said Defendant actually received monies, kickbacks and other illegal revenue from Defendants GEORGE, ROTHENBERG, FIRST CENTURY BANK, BANCSHARES, and other sources. Plaintiff is further informed and believes, and thereon alleges, that this was done by siphoning and taking monies which were meant for the judiciary, but were actually illegally diverted by Defendant RONALD M. GEORGE to the aforesaid banks (where he is a silent part owner). Upon additional information and belief, Defendant SCHWARZENEGGER was involved in receiving kickbacks from those ill-gotten sums. Interestingly, Defendant SCHWARZENEGGER's counsel in Los Angeles, MARTY SINGER, did not return any calls from DYDZAK to discuss the matter. Defendant WASSER abruptly and rudely terminated a telephone conversation with DYDZAK when the aforementioned subject was raised.

213. Upon information and belief, Defendant SHRIVER is, and was at all times herein mentioned, aware of her ex-husband's RICO activities. Moreover, her divorce counsel, Defendant WASSER, is himself an original investor in Defendant FIRST CENTURY BANK. In fact, a picture of Defendant WASSER lauding the reputation and banking expertise of Defendant FIRST CENTURY is prominently displayed on one of the web pages of said financial institution. Defendant SHRIVER knew that she would have more leverage using Defendant WASSER's legal team in her mega million divorce case, because of Defendant WASSER's intimate involvement with Defendant FIRST CENTURY as an investor, and knowing where all the financial bodies were buried related thereto.

214. Upon information and belief, Defendant SHRIVER knowingly participated in RICO actions with Defendant SCHWARZENEGGER by accepting ill-gotten gains and funds as part and parcel of her divorce settlement negotiated by Defendant WASSER and his daughter, LAURA WASSER. Defendant SHRIVER should not have taken such funds, period.

215. Plaintiff is informed and believes, and thereon alleges, that Defendant SCHWARZENEGGER has transacted financial deals and done money-laundering and other RICO activities, possibly to the Vatican Bank, through Defendant FIRST CENTURY. Defendant ROTHENBERG and GIRARDI have connections to the Vatican Bank

216. The RICO Defendants have betrayed the public trust by engaging in unlawful conduct as set forth herein and in the DUNN LAWSUIT. Quashing that lawsuit with a dishonest judge would further their objections of silencing DYDZAK, stopping potential media coverage,

and deny him his right to a jury trial on the merits.

**FIRST CAUSE OF ACTION**

**(DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW)**

**(AGAINST ALL DEFENDANTS OTHER THAN DEFENDANT USA)**

217. Plaintiff refers to and incorporates, as though fully set forth herein, the preceding Preliminary Allegations and Paragraphs of the Complaint.

218. This is an action for deprivation of constitutional rights under color of state law brought pursuant to the recodification Section 1979 of the Civil Rights Act of 1971, Title 42 United States Code, Section 1983, for remedies for Defendants' deprivation of Plaintiff's civil rights. Through this action, Plaintiff seeks all legal and equitable relief to which he is or may be entitled, including, but not limited to, compensatory and punitive damages, attorney's fees and costs, prejudgment interest, and declaratory and injunctive relief against the aforementioned Defendants and each of them.

219. Defendants, and each of them, have engaged in the unlawful and wrongful conduct and acts herein alleged, and thereby violated Plaintiff's civil and constitutional rights.

220. At all times herein mentioned, Defendants and each of them acted under color of their authority as such in doing all the things herein mentioned and taking the actions herein alleged.

221. In taking the actions herein alleged, Defendants acted, and continue to act, under

color of and pursuant to the laws, statutes, ordinances, regulations, customs and usages of the State of California, the State of Delaware and the District of Columbia.

222. By reason of the aforesaid conduct of Defendants, and each of them, Plaintiff was deprived of rights, privileges and immunities secured to him by the Constitution of the United States of America and laws enacted thereunder, in that the unlawful, wrongful and oppressive conduct herein alleged amounted to an arbitrary, vindictive, malicious and unprofessional intrusion into the security, safety and well-being of Plaintiff's privacy, person and livelihood and were not authorized by law. Furthermore, the herein described civil rights violations and unlawful and wrongful actions to Plaintiff's person and livelihood deprived Plaintiff of liberty and property without due process of law, including the ability to practice law as an active member of the State Bar of California and in the federal courts.

223. Jurisdiction of the subject matter of this action is established in this Court under Title 28 of the United States Code, Section 1343.

224. As a direct, legal and proximate result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff was injured, subjected to humiliation, indignity, undue emotional trauma and stress and prevented from transacting and attending to his normal business and personal affairs. Plaintiff suffered, and continues to suffer, great physical and mental pain and suffering, all to his general damage in an amount according to proof at or before trial.

225. As a direct, legal and proximate result of the Defendants' actions and conduct,

Plaintiff has also incurred special damages and medical expenses, in an amount according to proof at or before trial.

226. Punitive damages are warranted, according to proof, against the Defendants for their acts of malice, oppression and fraud, as herein alleged.

227. Therefore, Plaintiff requests appropriate injunctive relief, equitable relief, declaratory relief and other relief against Defendants, and each of them, to wit:

1. That it is adjudged and decreed that DYDZAK's constitutional and civil rights were violated, and continue to be violated, by Defendants and each of them, as herein alleged;

2. That any void Order marked by bias and conflicts of interest, or the appearance of same, be set aside in the interests of justice and based upon the doctrines of extrinsic fraud or fraud upon the court;

3. That this Honorable Court issue appropriate injunctive relief in the form of a Temporary Restraining Order, Preliminary Injunction or Permanent Injunction, or whatever similar equitable relief it believes is appropriate and legal to protect Plaintiff's civil, legal and constitutional rights;

4. That DYDZAK be granted appropriate declaratory relief in order to protect his civil and constitutional rights and remedy the unlawful actions and conduct alleged herein; and

5. That appropriate compensatory damages, punitive damages, attorney's fees and costs of suit incurred be awarded, according to proof.

**SECOND CAUSE OF ACTION**

**(VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO))**

**(AGAINST ALL DEFENDANTS EXCEPT DEFENDANT USA)**

228. Plaintiff refers to, and incorporates as though fully set forth herein, Paragraphs 1 through 227, inclusive, of the Complaint.

229. This is a cause of action brought under the RICO laws promulgated in 18 U.S.C. Sections 1961-1968.

230. Since 2004 and continuing to the present, Defendants and each of them engaged in, inter alia, obstruction of justice, money-laundering, mail, bank and wire fraud, and conversion of funds and monies of the State of California and United States, as herein alleged. Defendants, to further their RICO activities, as herein alleged, interfered with two earlier lawsuits filed by Plantiff, as herein alleged. Defendants did so, directly or indirectly, through an interest in and control of a RICO enterprise of individuals managing and supervising Defendant FIRST CENTURY and a holding company, Defendant BANCSHARES.

231. Said Defendants, and each of them, did and continue to do the following, without limitation:

(1) Acquired and maintained an interest in and control of an enterprise or enterprises engaged in a pattern of racketeering activity (18 U.S.C. Sections 1961(5), 1962(b)).

(2) Conducted and participated in a RICO enterprise or enterprises through a pattern of racketeering activity (18 U.S.C. Sections 1961(5) and 1962(c).

(3) Conspired to engage in a pattern of racketeering activity (18 U.S.C. Sections 1961(5), 1962(d)).

232. Defendants, and each of them, cooperated, jointly and severally, in the commission of two or more RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. Section 1961, in violation of 18 U.S.C. Section 1962.

233. Plaintiff further alleges that the RICO offenses and violations by the aforementioned Defendants, and each of them, were done in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities in violation of 18 U.S.C. 1962.

234. Plaintiff requests that this Honorable Court find that Defendants have actively engaged in RICO violations; that they be required to account for all gains, profits and advantages derived from their several acts of racketeering activity; that they pay to Plaintiff treble damages, under authority of 18 U.S.C. 1964, for any gains, profits or advantages attributable to all violations of 18 U.S.C. 1962, according to proof; that they pay to Plaintiff all damages sustained by him caused by Defendants' several violations of 18 U.S.C. 1962 and illegal interference with his lawsuits and legal career and standing as an attorney, according to proof; that Plaintiff be awarded all reasonable costs of suit, according to proof; that the damages, gains, profits and

advantages caused by said Defendants' racketeering activity and interference with DYDZAK's legal rights be deemed to be held in constructive trust, for the benefit of Plaintiff, his heirs and assigns; and that the Court award such other relief as warranted in the premises.

**THIRD CAUSE OF ACTION**

**APPOINTMENT OF RECEIVER**

**(AGAINST JAMS, FIRST CENTURY, BANCSHARES AND USA)**

239. Plaintiff refers to, and incorporates as though fully set forth herein, Paragraphs 1 through 238, inclusive, of the Complaint.

240. In view of the RICO violations and other violations of federal law herein stated, including acts of obstruction of justice and breaches of federal banking regulations, it is appropriate and warranted that the Court order in the interests of equity and justice a receiver to dissolve, wind up and look into and audit the affairs of Defendants JAMS, FIRST CENTURY and BANCSHARES. Same is sought in order to safeguard Plaintiff's legal rights and the legal rights of the public at large and have returned wrongfully converted sums and unlawful gains, as herein alleged.

241. As the appointment of a receiver and accounting will benefit Defendant USA, said Defendant should be cited by the Court to appear in this action, by way of interpleader or filing a complaint in intervention in the interests of justice and equity.

WHEREFORE, Plaintiff prays as follows:

**ON FIRST CAUSE OF ACTION**

1. For general damages, according to proof;

2. For special damages and medical expenses, according to proof;

3. For reasonable attorney's fees, according to proof pursuant to Title 42 of the United States Code, Section 1988(b);

4. For costs of suit incurred herein;

5. For appropriate equitable, declaratory and injunctive relief; and

6. For such other relief as the Court deems proper in the premises.

**ON SECOND CAUSE OF ACTION**

1. For general and special damages in the amount of $ 50,000,000.00;

2. For appropriate declaratory and equitable relief, according to proof;

3. For appropriate statutory remedies and damages, according to proof;

4. For RICO remedies, relief and damages, according to proof;

5. For costs of suit incurred herein; and

6. For such other relief as the Court deems proper in the premises.

**ON THIRD CAUSE OF ACTION**

1. For appointment of a receiver, as prayed;

2. For costs of suit incurred herein; and

3. For such other relief as the Court may deem proper in the premises.

Dated: September 4, 2012 BY: ______________________

DANIEL D. DYDZAK
PLAINTIFF PRO SE